WILLIAM GERSCH, Plaintiff-Appellant, v. KELSO-BURNETT COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—93—3973

Opinion filed May 22, 1995.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Lisa Thaviu, of counsel), for appellant.

Kiesler & Berman, of Chicago (Edward L. Cooper, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, William Gersch, filed a personal injury suit against defendant, Kelso-Burnett Company, for injuries he sustained on June 6, 1986, when his hand came in contact with live electrical wires. Defendant was the electrician on a construction site where plaintiff was injured. The jury returned a verdict for plaintiff. The trial court granted defendant's post-trial motion for a new trial.

Plaintiff filed his petition for leave to appeal alleging that the trial court abused its discretion in ordering a new trial because (1) defendant was not surprised by plaintiff's future wage loss claim and the issue properly went to the jury; (2) defendant failed to conform to the requirements for a new trial based on newly discovered evidence; (3) the trial court properly excluded the videotape of plaintiff offered by defendant at trial; and (4) the trial court properly limited defendant's cross-examination of plaintiff's witness regarding workers' compensation benefits. We granted plaintiff's motion to reconsider denial of the right to appeal on February 18, 1994.

The purpose of a motion for a new trial is to give the trial court an opportunity to correct any error it made at trial. (*Keen v. Davis* (1967), 38 Ill. 2d 280, 281, 230 N.E.2d 859, 860.) Jury verdicts should not be set aside and cause the expense of a new trial unless there has been a miscarriage of justice, caused by an error that prejudiced and affected the substantial rights of an innocent party. (*Southern Illinois Airport Authority v. Smith* (1994), 267 Ill. App. 3d 201, 209, 641 N.E.2d 1240, 1246.) A reviewing court will not reverse the order granting a new trial unless it is shown to be an abuse of discretion. *Southern Illinois*, 267 Ill. App. 3d at 204, 641 N.E.2d at 1242.

Plaintiff first argues that the trial court erred when it reversed its prior rulings and held that plaintiff's claim for future lost earnings should not have been submitted to the jury because defendant was surprised by the claim at the time of trial. Several times at trial, the court denied defendant's motion to bar the claim or sustained defendant's objections to introduction of evidence concerning future wage loss. Specifically, at trial, the court stated:

"[I]t seems to be that you're not taken by surprise, Mr. Jump. It seems to me although I tend to agree with you that these [supplemental interrogatories], in fact, should have been updated by plaintiff's counsel *** I think it has also been pointed out to me in our discussion as of Thursday of last week that counsel was going to seek lost wages up until and including perhaps the date of trial *** I don't believe that that's [surprise] occurred."

At trial, the court barred any claims for lost wages after February 8, 1991, the date of plaintiff's deposition, through the end of that year. When defendant asked the court to reconsider its ruling, the court found that defendant was in possession of plaintiff's tax returns and knew that the issue of future wages would be developed.

At the post-trial hearing, the court stated that it had erred during the trial in allowing a future wage loss claim to go to the jury. It did not believe that the tax records equated to a loss of income.

Defendant's entire claim is based on surprise. It argued at trial, and after trial, that it had no notice of a claim for future wage loss until the morning (during trial) Dr. Pedersen's discovery deposition was taken and the doctor stated that plaintiff's injuries were permanent. It argued that plaintiff had not presented such a claim in his answers to interrogatories, never answered supplemental interrogatories, and never made the claim at his deposition.

Plaintiff argues that defendant had notice of the claim based on the fact that, at his deposition, Dr. Feely stated that plaintiff's injuries were permanent and that plaintiff himself testified at his deposition that because of his injuries he was no longer able to perform his normal activities. Plaintiff testified that he could not keep a job because of his inability to perform the work. According to plaintiff, this evidence put defendant on notice of a claim for future wage loss.

■ The issue is whether defendant was surprised at trial by plaintiff's claim for future lost wages. We find that there was ample evidence available to defendant prior to trial to put it on notice that plaintiff's injuries were permanent and affected his ability to work and earn wages as he previously did. Plaintiff's complaint provides the first notification. In paragraph 6, the complaint states that plaintiff is "unable to work as a carpenter foreman." In addition, the complaint avers that plaintiff was "deprived of great gains which he would have otherwise made; has serious and permanent injuries." Plaintiff also provided defendant with tax returns for the years following the accident which show a decrease in the income he earned.

The record further demonstrates that Dr. Feely testified in his deposition on March 31, 1993, that plaintiff's injuries were permanent. At the time of his examination, the doctor observed abnormal

findings that led him to believe plaintiff would perpetually suffer from muscle and ligament pain.

Finally, plaintiff's testimony in his deposition furnished defendant with knowledge that his injuries affected his life and his ability to work. Plaintiff testified that he was no longer able to perform the activities he previously performed. Prior to the accident, he was able to lift 250 to 300 pounds. At the time of his deposition, he was only able to lift 50 to 70 pounds. He could no longer touch his toes and was unable to perform work over his head.

Plaintiff testified that he lost numerous jobs because he was unable to perform them. In July 1987, plaintiff began working for Tempest Construction which involved the same type of work he performed previously. He stated that doing the work was difficult. He experienced constant pain in his neck, his upper back, and arms. His right arm went out periodically, he had headaches every day, and he had ringing in his ears. Although he remained at this job for approximately two years, he was discharged for lack of performance. After Tempest, plaintiff went into business with a friend rendering the same type of carpentry activities. Because he could not maintain his share of the work load, the business was dissolved.

After ceasing the business, plaintiff was employed by Turner Construction as a general foreman. This position initially did not require him to do physical labor. At some point, however, he was required to perform physical labor and, because he was unable to, he was terminated. Plaintiff then worked for Commonwealth Edison for one week but was let go because he was unable to perform the job. He also worked for Opus Construction for one day but left for the same reason. At the time of trial, he had been working for R&G Construction for seven days. Plaintiff's testimony reveals that although he is able to perform some work, he is unable to perform at the level or capacity he achieved prior to the accident. Based on this, defendant should have been aware that plaintiff would present a claim for future lost wages.

The defendant was not ambushed at trial by plaintiff's claim for future wage loss. Notwithstanding the above evidence, the record illustrates that the attorneys discussed the claim on several prior occasions. In addition, defendant filed a motion *in limine* prior to trial to bar the claim. Thus, defendant did have notice of the claim prior to the morning of Dr. Pedersen's deposition and prior to the commencement of the trial.

Based on the above, the trial court's decision granting a new trial and barring plaintiff's claim for future wages was an abuse of discretion. Defendant was not surprised by the claim and the trial court made this finding on at least three prior occasions.

■ Plaintiff's second argument is that defendant's newly discovered evidence, the affidavit of Mr. Conroy of Turner Construction, plaintiff's former employer, did not warrant a new trial. Defendant offered the affidavit to show plaintiff testified falsely at his deposition and trial concerning his termination at Turner. Specifically, plaintiff argues that defendant failed to show that plaintiff testified falsely. Second, the affidavit is not conclusive on any material issue. Third, defendant did not show due diligence in obtaining the evidence. Finally, the affidavit is hearsay. Defendant did not address this issue in its brief.

Granting a new trial based on newly discovered evidence is not looked upon with favor and is subject to close scrutiny. (*Principato v. Rudd* (1981), 102 Ill. App. 3d 362, 368, 430 N.E.2d 63, 67.) To justify a new trial based on new evidence, defendant must show due diligence in discovering the evidence. (*Bishop v. Morich* (1993), 250 Ill. App. 3d 366, 621 N.E.2d 43, *appeal denied* (1993), 153 Ill. 2d 557, 624 N.E.2d 804.) Defendant must show that it could not have produced the evidence at the first trial by exercising due diligence. Defendant must also demonstrate that the evidence is so conclusive that it would probably change the trial result. (*Bishop,* 250 Ill. App. 3d at 370, 621 N.E.2d at 46.) It must be material and relate to the issues and cannot be merely cumulative or serve the sole purpose of impeachment.

The affidavit of Mr. Conroy states that plaintiff was terminated from Turner because plaintiff failed to report to a jobsite and did not telephone the company as to why. This affidavit does not warrant a new trial. First, defendant did not establish due diligence in obtaining the evidence. At plaintiff's deposition, he stated the reason he believed he was terminated from Turner. Thereafter, defendant subpoenaed the records of Turner. Had defendant desired to protest plaintiff's statement regarding his discharge, it had ample opportunity to investigate further. It did not do so and cannot now claim that this evidence is new. It was available at the first trial if defendant had utilized diligence. Second, the evidence is not so conclusive to change the outcome of the trial. The only issue at trial was damages. While the affidavit may have been relevant to show, in the mind of the affiant, plaintiff's ability to work, it does not illustrate what jobs plaintiff could perform. It does not state that plaintiff was able to do heavy lifting or work over his head without pain. The real purpose of the affidavit was to impeach plaintiff's testimony. This purpose does not justify a new trial. Therefore, to the extent, if any, the trial court's decision to grant a new trial was based on this affidavit, the decision is erroneous.

■ Plaintiff's third argument is that the trial court's decision to

allow the videotape of him on retrial was an abuse of discretion. The videotape shows plaintiff engaged in various carpentry acts. Plaintiff testified at his deposition and trial that he was able to perform carpentry work, but was unable to perform certain acts, *e.g.*, lifting heavy weights and working over his head for an extended period of time. The trial court reversed its decision to exclude the tape because it could have an effect "on the jury to determine what the future wages or lost wages of Mr. Gersch would be." Because we are reinstating the jury's verdict, this issue is moot.

■ Finally, plaintiff argues that the trial court abused its discretion in finding that it improperly limited defendant's cross-examination of plaintiff's witness regarding workers' compensation benefits. At post-trial, the court held that such testimony would be relevant to the witness' bias. Although older case law holds that testimony regarding workers' compensation payment recoveries is generally admissible to show a financial interest in the outcome of a proceeding and, thus, bias on the part of a witness (see *Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 70-71, 264 N.E.2d 170, 173; *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 724, 449 N.E.2d 250, 253), there was no error when the trial court initially restricted such testimony. The witness did not testify that plaintiff was not able to return to work because of the injuries he sustained. The witness testified that the company had no work available for plaintiff based on both his medical restrictions and the fact the company was downsizing and lacked jobs. This testimony would not aid plaintiff's case against defendant, thereby affording the company an opportunity to financially benefit. Therefore, the witness' bias, if any, was minimal and did not prejudice the defendant.

For the foregoing reasons, the trial court's order granting a new trial is reversed and the jury verdict is reinstated.

Reversed.

WOLFSON and BRADEN, JJ., concur.