SECOND DIVISION

JUNE 20, 2000

1-99-0045

JUDITH WIKER, ) Appeal from the

) Circuit Court

Plaintiff-Appellant, ) of Cook County

)

v. ) No. 93 M4 764

)

MARY BETH PIEPRZYCA-BERKES, ) The Honorable

) Joan M. Pucillo,

Defendant-Appellee. ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the

court: 

The plaintiff brought this tort action seeking compensation for injuries that she allegedly suffered as a result of an automobile collision.  The plaintiff rejected an arbitration award and went to trial.  At trial, the court denied the plaintiff's motion for a directed verdict on the issue of liability.  The jury ruled in favor of the defendant.  The plaintiff filed a motion for judgment notwithstanding the verdict, or in the alternative a new trial.  The trial court denied the motion.

The plaintiff now appeals, arguing that: (1) the evidence so overwhelmingly favored her case that it was error for the trial court not to grant her judgment notwithstanding the verdict; (2) alternatively, the trial court should have ordered a new trial because the jury's verdict was against the manifest weight of the evidence; (3) evidence of injuries sustained by the plaintiff in a prior auto accident should not have been admitted without a showing by the defendant that those injuries could be the cause of her current maladies; (4) the trial court erred in barring admission of certain medical bills that the plaintiff introduced late; (5) she is entitled to a new trial because the defendant did not disclose in discovery a surveillance video; (6) the trial court erred in sustaining two objections to plaintiff's closing argument; and (7) the trial court erred in requiring the jurors to deliberate further when they sent the judge a note indicating that they were deadlocked.

BACKGROUND

On the afternoon of March 27, 1991, Judith Wiker, the plaintiff, was driving her sport utility vehicle (SUV) on Lakeshore Drive in Chicago.  When she was stopped in traffic, the car of Judith Pieprzyca-Berkes, the defendant, collided with the rear of the plaintiff's SUV.  The accident caused no significant damage to the SUV.  The grill of the defendant's car popped out and one headlight was broken.  The plaintiff testified at trial that in the collision her head was thrown back and hit the headrest.

Since the accident the plaintiff has seen a number of health care providers.  Immediately after the accident, she claims, she began to have head, neck and back problems.  The next day she saw a chiropractor, Dr. William Schenck, complaining of low back pain, neck pain, a headache, disorientation, a choking sensation and difficulty swallowing.  Although she said that these problems started the previous day, she also indicated that she had had episodes of neck and hip pain after a previous
 
accident three years before.  Dr. Schenck noted that the plaintiff's thyroid gland was somewhat swollen.

She continued with Dr. Schenck for treatment, seeing him about 20 times before he moved to Vermont.  He recommended a nutritional supplement for the thyroid condition and other types of therapy for the back and neck pain.  After Dr. Schenck left, his partnerm, Dr. Luke Maes, took over treatment of the plaintiff.  The plaintiff became dissatisfied with Dr. Maes' treatment and went to another chiropractor, Dr. Frank Fiala, who started her on a course of physical therapy.  Dr. Fiala referred her to an orthopedic surgeon, Dr. Michael Zindrick.  Dr. Zindrick saw the plaintiff once.  His testing revealed only minor cervical and lumbar sprain, as well as some degenerative changes in the back which he thought predated the auto accident.

Dr. Fiala told the plaintiff that he had given her all the treatment that he could for her pain.  In early 1993, the plaintiff went to see Dr. Grant Seivertsen, an endocrinologist, about her thyroid condition.  Dr. Seivertsen diagnosed her as having Hashimoto's hypothyroidism, an autoimmune disorder, but he did not think it had anything to do with the auto accident.

Dr. Maria Hofmaier, another chiropractor, saw the plaintiff once and referred her to Dr. Henry Echiverri.  Dr. Echiverri was a neurologist who saw the plaintiff twice.  His opinion was that the plaintiff had cervical strain-sprain, a herniated disk and post-concussion injury. 

The plaintiff went to see two out-of-state doctors whom she knew had done work associating hypothyroidism with neck trauma. First she went to a doctor in Boston named Rothfield, and then to Dr. Keith Sehnert in Minnesota.  At the time of trial, the plaintiff was seeing a chiropractor, Dr. Donald Backstrom, on a regular basis.  In answer to questions asked on cross-examination, he stated that he had not yet been paid but would expect to be paid if the plaintiff won.

Dr. Sehnert testified at trial that in his opinion the plaintiff’s thyroid condition was a result of the automobile accident.  However, Dr. Berlinger, an expert witness for the defendant, testified that the type of injury sustained by the plaintiff could not cause hypothyroidism.

The plaintiff requested a directed verdict on the issue of liability, but the trial court denied the motion.  The jury found for the defendant.  The plaintiff moved for judgment notwithstanding the verdict or in the alternative a new trial.  The trial court denied this motion, and the plaintiff now appeals.

ANALYSIS 

I

The plaintiff first contends that the trial court erred in denying her motion for judgment notwithstanding the verdict or, in the alternative, a new trial.  A motion for judgment notwithstanding the verdict should only be granted when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could ever stand based on that evidence. 
Lake v. Bertrand
, 215 Ill. App. 3d 578, 580, 574 N.E.2d 1372, 1373 (1991).  A motion for a new trial should only be granted when the verdict is against the manifest weight of the evidence.  
Moran v. Erickson
, 297 Ill. App. 3d 342, 352, 697 N.E.2d 780, 787 (1998).  A court's ruling on a motion for a new trial will only be disturbed if it constitutes an abuse of discretion.  
Moran
, 297 Ill. App. 3d at 353, 697 N.E.2d at 787.

In this case, the plaintiff argues that the defendant's testimony on cross-examination established her negligence as a matter of law.

"Q. As I understand your testimony, you were not looking directly ahead at Judith's car, correct, when traffic started to move?

A. Correct.

Q. Because had you been looking forward, you would have seen her car and not hit it, correct?

A. Correct."

The plaintiff notes that a driver has a duty to maintain a proper lookout for traffic ahead.  
Glenn v. Mosley
, 39 Ill. App. 3d 172, 176, 350 N.E.2d 219, 222 (1976).  And while a rear-end collision does not establish 
per
 
se
 a defendant's negligence, it is certainly very strong evidence of negligence. 
Glenn
, 39 Ill. App. 3d at 176, 350 N.E.2d at 222.

In order to establish liability, however, the plaintiff was required to do more than demonstrate that the defendant was negligent. See 
Moran
, 297 Ill. App. 3d 342, 696 N.E.2d 780 (verdict for defendant sustained even though defendant admitted negligence).  A plaintiff in a negligence action must show the breach of a duty of care, proximate causation and compensable damages. 
Ogle v. Fuiten
, 112 Ill. App. 3d 1048, 1052, 445 N.E.2d 1344, 1347 (1983).  In this case, there was evidence to support the jury's verdict on the basis of lack of causation.   

First, there was ample evidence that the automobile accident did not cause the plaintiff's thyroid problems.  Dr. Berlinger, the defense's expert witness in endocrinology, testified that it was impossible for the type of injury that the plaintiff sustained to cause hypothyroidism.  Moreover, the plaintiff's endocrinology expert admitted on cross-examination that his assertion that a blow to the neck could cause Hashimoto's thyroiditis was only a hypothesis and would take many years to prove.

Second, there was evidence that the accident did not cause the problems with the plaintiff's spine.  There was no damage to the plaintiff's vehicle and only superficial damage to the defendant's vehicle.  The plaintiff did not complain of injury at the time of the accident and did not go to a hospital emergency room.  Admittedly, the plaintiff had several medical providers testify that, in their opinion, the accident had injured the plaintiff's spine.  But Dr. Zindrick, the orthopedic surgeon who examined the plaintiff, said in his evidence deposition that his examination revealed no significant spinal problems except for normal degenerative changes associated with aging.  A verdict in favor of the defendant can be sustained where the defendant successfully discredits the testimony of the plaintiff's witnesses.  
Moran
, 297 Ill. App. 3d at 353, 697 N.E.2d at 787.

II

The plaintiff next contends that the trial court erred in admitting evidence that the plaintiff had sustained some injuries to her back in a prior automobile accident.  The plaintiff had moved 
in
 
limine
 to exclude such evidence.  Before allowing evidence of a prior accident, the plaintiff argues, the trial court should have required the defendant to provide competent evidence that the prior accident could have been the cause of the plaintiff's current complaints.  We agree.

For a period this court applied the "same part of the body rule" to determine the admissibility of evidence of prior injuries in personal injury cases.  Under the "same part of the body rule," evidence of a prior injury was admissible as long as the injury was to the same part of the body as the injury at issue in the litigation.  See B. McDonald, 
"Same Part of the Body Rule" Revised: Admissibility of Prior Injuries in PI Cases
, 87 Ill. B.J. 414 (1999).

The fifth district refined the approach toward such evidence in 
Brown v. Baker
, 284 Ill. App. 3d 401, 672 N.E.2d 69 (1996).  The 
Brown
 court noted that under the "same part of the body rule" evidence of a minor injury that had been healed and symptom free for decades could be admitted without any further showing of relevance or causation.  "Without the benefit of testimony regarding causation in these instances, jury members are invited to speculate on a nexus between the past accident and the present injury."  
Brown
, 284 Ill. App. 3d at 405, 672 N.E.2d at 71. Accordingly, the 
Brown
 court held that "[i]f a prior injury has long since healed and has shown no recurring symptoms, a defendant should not be permitted to introduce evidence of the prior injury without establishing causation." 
Brown
, 284 Ill. App. 3d at 405, 672 N.E.2d at 71.

This court adopted the 
Brown
 approach in 
Cancio v. White
, 297 Ill. App. 3d 422, 697 N.E.2d 749 (1998).  
Cancio
 extended the reasoning of 
Brown
 to preexisting conditions as well as to prior accidents or injuries.  
Cancio
, 297 Ill. App. 3d at 430, 672 N.E.2d at 754.  We ruled that, "absent competent and relevant evidence of a causal connection between the preexisting condition and the injury complained of, evidence of the preexisting condition is inadmissible."  
Cancio
, 297 Ill. App. 3d at 430, 672 N.E.2d at 754.

In 
Lagestee v. Days Inn Management Co.
, 303 Ill. App. 3d 935, 709 N.E.2d 270 (1999), this court again applied the 
Brown
 rule.  In 
Lagestee
, the plaintiff alleged that his back was injured when he slipped and fell into a pole projecting from a fence.  The defendant attempted to introduce evidence suggesting several alternative causes of the plaintiff's injuries.  The defendant presented evidence that the plaintiff: (1) had degenerative disk disease prior to the fall; (2) had sustained an injury from a previous auto accident three years before; (3) had sustained an injury at work four years before the accident at issue; (4) had sustained an unspecified injury from football in high school 15 years before the accident; and (5) smoked cigarettes.  
Lagestee
 held that the trial court erred in allowing the defendant to present evidence concerning the prior injuries and the smoking, because the defendant did not present any evidence of a causal connection. "[T]he defendant is required to present medical or other competent evidence of a causal or relevancy connection between plaintiff's prior injury, prior accident, or preexisting condition and the injury at issue as a prerequisite of admissibility."  
Lagestee
, 303 Ill. App. 3d at 946-47, 709 N.E.2d at 279. 

The defendant reads the phrase "causal or relevancy connection" to mean that she has the option of either showing that the prior accident was relevant or that there was a causal connection.  This reading of 
Lagestee
 does not comport with basic principles of evidence law.  
All
 evidence must be relevant to be admissible. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §402.1 (6th ed. 1994). In the particular type of situation presented by this case, where the evidence of a prior accident is offered as an alternative cause of a plaintiff's injuries, the defendant must come forward with evidence of a causal connection in order to establish relevance.  In other words, competent evidence of causation is required to "connect it up." 
Caley v. Manicke
, 29 Ill. App. 2d 323, 331, 173 N.E.2d 209, 212-13 (1961), 
rev'd on other grounds
, 24 Ill. 2d 390, 182 N.E.2d 206 (1962).  (In a situation where the evidence is being offered for some other purpose, relevancy might be established in a different way.  For instance, if it were being offered for impeachment, the defendant would need to show that it contradicted the plaintiff's testimony on a material point in order to connect it up. 87 Ill. B.J. at 418-19.)  In our view, the "or" in the 
Lagestee
 quote merely joins two ways of describing the connection that the proponent of the evidence must show.  In short, as a general matter there must be a relevance connection, which in this particular situation means there must be evidence of a causal connection.

In this case, as in 
Lagestee
, the prior automobile accident occurred several years before the accident at issue in the litigation.  Moreover, the defendant did not offer evidence that would contradict the plaintiff’s assertion that the prior accident only caused minor injuries that had long since healed.  Although the plaintiff had massage therapy a few times soon after the prior accident, she had not sought any treatment since then.  Witnesses for the plaintiff testified that the plaintiff engaged in various types of strenuous physical activity prior to the collision at issue here.  Accordingly, evidence of the prior accident should not have been admitted.  See 
Voykin v. Estate of DeBoer
, 306 Ill. App. 3d 689, 695, 714 N.E.2d 607, 611-12 (1999).

In order to connect it up, the defendant was obligated to present evidence from which a jury could reasonably conclude that the prior accident rather than the latter was the cause of the plaintiff's injuries.  
Caley
, 29 Ill. App. 2d at 330, 173 N.E.2d at 212; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §104.2 (6th ed. 1994).  The defendant does not have the burden of persuading the court that the prior accident was in fact the cause.  Rather, the defendant has the burden of coming forward with sufficient evidence that it was the cause. 
Vojas v. K mart Corp.
, 312 Ill. App. 3d 544, 552, 727 N.E.2d 397, 404 (2000); 
Caley
, 29 Ill. App. 2d at 327, 173 N.E.2d at 211; 87 Ill. B.J. at 419.   Moreover, such evidence may not be based on mere possibilities or conjecture.  
Lagestee
, 303 Ill. App. 3d at 945, 709 N.E.2d at 277.

There is no 
per
 
se
 requirement that the connecting evidence be expert medical testimony.  Whether expert testimony is required may depend on the "nature, extent, duration and treatment of the prior injuries, prior accidents or preexisting condition and the injury for which plaintiff is seeking damages." 
Lagestee
, 303 Ill. App. 3d at 947, 709 N.E.2d at 279.  Nevertheless, as a practical matter, expert medical testimony will usually be necessary in order for the defendant to show that a prior injury, long since healed and free of recurring symptoms, is the cause of the plaintiff's maladies.  87 Ill. B.J. at 420.

In our view, the admission of evidence in the instant case without a causal connection constitutes reversible error and, accordingly, a new trial is mandated.

III

The plaintiff next contends that the trial court erred in disallowing certain medical bills that were disclosed late.  The plaintiff does not dispute that some of the bills for continuing treatment with Dr. Backstrom as well as bills for nutritional supplements were not disclosed until a few days before the trial.  The trial court found that the plaintiff had failed to seasonably supplement her responses to discovery and, thus, pursuant to Illinois Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)), barred the plaintiff from introducing those bills.  The imposition of sanctions is a matter within the discretion of the trial court and will not be disturbed absent an abuse of that discretion.  
In re Application of County Treasurer
, 150 Ill. App. 3d 696, 701, 502 N.E.2d 268, 272 (1986).  

According to the plaintiff, the sanction was inappropriate because the defendant was not surprised.  The plaintiff cites 
Gersch v. Kelso-Burnett Co.
, 272 Ill. App. 3d 907, 908, 651 N.E.2d 569, 570-71 (1995).  Nevertheless, as the 
Gersch
 court noted: "[j]ury verdicts should not be set aside and cause the expense of a new trial unless there has been a miscarriage of justice, caused by an error that prejudiced and affected the substantial rights of an innocent party." 
Gersch
, 272 Ill. App. 3d at 908, 651 N.E.2d at 570.   Here, the plaintiff has not denied that she submitted the bills late.  The trial court could impose Rule 219(c) sanctions if this failure was unreasonable.  
Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.
, 262 Ill. App. 3d 636, 641, 634 N.E.2d 1319, 1323 (1994).  In our view, the trial court was better situated than this court to determine whether the plaintiff's noncompliance was justifiable.  And even had the trial court's action been in error, there would be no prejudice requiring a new trial, for the jury never reached the issue of damages.

IV

 During discovery, the plaintiff requested that the defendant produce any "videotape *** taken subsequent to the alleged occurrence."  The defendant had in fact had a surveillance video of the plaintiff made but decided not to use it at trial.  The plaintiff contends that the defendant's failure to turn over the surveillance video warrants a new trial.

The defendant argues in response that she was not required to disclose the videotape because it was to be used, if at all,  only for cross-examination.  In 
Southern Illinois Airport Authority v. Smith
, 267 Ill. App. 3d 201, 207, 641 N.E.2d 1240, 1244 (1994), the court held that a party need not turn over in discovery documents to be used solely in cross-examination and that are within the public domain and are equally available to both parties.  However, we do not think that this rule applies in the instant case.  The document in question in 
Southern Illinois Airport Authority
 was a deed and thus truly was in the public domain.  The other party could have obtained an exact copy simply by going to the office of the recorder of deeds.

In this case, however, the videotape was not equally available to both parties.  The defendant protests that the plaintiff knows what her actions have been and thus she has access to the information contained in the videotape that records them. 
Southern Illinois Airport Authority
, however, does not speak of equal availability of the information contained in the document, but speaks of the document itself as being in the public domain and equally available to both parties.  
Southern Illinois Airport Authority
, 267 Ill. App. 3d at 207, 641 N.E.2d at 1244.  And while the plaintiff may know her actions, she does not know the impression that would be created by a particular videotape with its particular editing choices, lighting conditions, camera angles, 
et
 
cetera
.  Accordingly, we think that the defendant would have been obligated to disclose the video in order to use it at trial, even for cross-examination.

In this case, however, the defendant did not use the videotape as evidence.  Accordingly, we do not think that she was obligated to disclose the videotape.  Illinois Supreme Court Rule 201(b)(3) provides:

“A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial.  The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means.” 166 Ill. 2d R. 201(b)(3).

In our view, the person hired to make the surveillance video qualifies as a consultant under this rule, so long as he or she and the video are not presented at trial.  See D. Minichello, 
Use and Abuse of Surveillance Videos
, 85 Ill. B.J. 22, 24 (1997).  

V

The plaintiff argues that the jury’s verdict must be overturned because the court erroneously sustained certain objections the defense made during the plaintiff’s closing argument.  We disagree.  

At one point during argument, counsel for the plaintiff commented on the burden of proof.  Defense counsel objected and the trial court sustained the objection.  Later, counsel stated that the defendant was required to present a medical expert to demonstrate a causal connection between the prior accident and the plaintiff’s injuries.  Again defense counsel objected and the court sustained the objection.  In our view, the trial court was correct to sustain the objections.  First, it is the job of the trial court, not counsel, to instruct the jury on the law. 
Tenenbaum v. City of Chicago
, 60 Ill. 2d 363, 375, 325 N.E.2d 607, 615 (1975).   Second, in light of 
Lagestee
, it is clear that the second comment was an erroneous statement of the law. 

VI

Finally, the plaintiff argues that a new trial is mandated because the trial court sent the jurors back for further deliberations after they had indicated that they were deadlocked.  We disagree.  In this case, the jury deliberated approximately six hours before reaching a unanimous verdict.  However, the amount of time that a jury will be allowed to deliberate is within the trial court’s discretion.  
Fontanne v. Federal Paper Board Co.
, 105 Ill. App. 3d 306, 317, 434 N.E.2d 331, 340 (1982).  Even if a jury has indicated that it is hopelessly deadlocked, the trial court has discretion to permit further deliberation.  
Ciolino v. Bernstein
, 231 Ill. App. 3d 68, 75, 596 N.E.2d 83, 88 (1992). 

For the foregoing reasons the judgment of the circuit court is reversed and remanded for a new trial.

Reversed and remanded.

McBRIDE and GORDON, JJ., concur.