2022 IL App (1st) 210268

No. 1-21-0268

<table>
<tr><td></td><td></td><td>SECOND DIVISION<br>March 1, 2022</td></tr>
<tr><td>DARRELL HORN,</td><td>)<br>)</td><td>Appeal from the<br>Circuit Court of</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)<br>)</td><td>Cook County.</td></tr>
<tr><td>v.</td><td>)</td><td>No. 19 L 2002</td></tr>
<tr><td>NORTHEAST ILLINOIS REGIONAL COMMUTER<br>RAILWAY CORPORATION, d/b/a Metra,</td><td>)<br>)<br>)</td><td><br>Honorable<br>Moira S. Johnson,</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td><td>Judge Presiding.</td></tr>
</table>

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

OPINION

¶ 1    In February 2019 plaintiff, Darrell Horn, filed a complaint against defendant, Northeast Illinois Regional Commuter Railway Corporation, d/b/a Metra (Metra), pursuant to the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (2018)), seeking damages for injuries Horn allegedly sustained in January 2019 in the course of his employment. While Horn was working as a locomotive engineer, the seat he was sitting in while performing work for Metra broke. The parties engaged in discovery. Metra refused to turn over documents generated by its investigator related to surveillance of Horn after his alleged injuries, claiming the materials are privileged under Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014). The trial court disagreed and held Metra in "friendly contempt" for the purposes of this appeal.

¶ 2    For the following reasons, we reverse in part and vacate in part.

¶ 3                                    I. BACKGROUND

¶ 4    During discovery, in June 2019, Metra answered Horn's interrogatories. One interrogatory asked Metra whether there had been surveillance of Horn's activities from the date

of the occurrence to the present and, if so, asked Metra to state the name and address of the persons conducting the surveillance, whether Metra was in possession of surveillance reports and the dates of any such reports, and whether Metra was in possession of any photographs or video depicting Horn's activities and, if so, the dates they were taken. Metra answered there had been surveillance of Horn's activities and identified Subrosa of Phoenix, Arizona, as the entity conducting the surveillance. Metra also disclosed that it was in possession of surveillance reports from March 1, 7, and 8, 2019, and that there were photographs or video of Horn's activities on those dates. Metra also responded to Horn's request to produce "[a]ny and all surveillance photos, videos, reports or other documents on [Horn] *** from any contractor performing surveillance" with the surveillance videos, without objection, and with redacted reports from Subrosa.

¶ 5     In July 2019, Horn subpoenaed Subrosa's "entire file or other materials related to your surveillance of Darrell Horn." In August 2019, Metra filed a motion to quash Horn's subpoena to Subrosa. Metra's motion to quash argued in part that pursuant to Rule 201(b)(3) Subrosa's reports are not subject to discovery absent exceptional circumstances and no exceptional circumstances exist to justify disclosing the information Horn sought with the subpoena. In October 2019, the trial court entered an order reserving ruling on Metra's motion to quash, ordering Subrosa to produce responsive documentation directly to Metra and ordering Metra to raise written objections to specific documents. Metra submitted its objections and a privilege log asserting that several Subrosa responses were privileged under Rule 201(b)(3). (The allegedly privileged documents will hereinafter be referred to as the "Subrosa Documents.") Metra submitted Subrosa's response to the trial court for an *in camera* inspection.

¶ 6    In December 2019, the trial court initially ordered Metra to produce a redacted copy of the Subrosa Documents to Horn, but seven days later, following a hearing, the trial court ordered Metra to produce unredacted Subrosa Documents to Horn. Metra filed a motion to stay the order directing Metra to provide Horn with the unredacted documents so that it could file a motion to reconsider. The trial court denied the motion to stay but granted Metra a date by which to file a motion to reconsider. In January 2020, Metra filed its motion to reconsider. At that time Metra had not complied with the trial court's order to produce the unredacted documents, and Horn filed a petition for a rule to show cause why Metra should not be held in contempt. Metra's motion to reconsider cited Rule 201(b)(3) but argued that "the attorney work product privilege extends to an investigator" and the reports at issue "are communications between Metra's consultant and Metra's Risk Management and Law Department and was prepared in anticipation of litigation," therefore the trial court erred in ordering Metra to produce the documents.

¶ 7    Following briefing on Metra's motion to reconsider and Horn's petition for rule to show cause and a hearing on both pleadings, in August 2020, the trial court entered its orders. The court ordered the petition for rule to show cause would be considered a motion to compel and ordered Metra to produce the unredacted Subrosa Documents. In December 2020, Metra filed a second motion to reconsider based on the November 2020 opinion by the Illinois Supreme Court in *Dameron v. Mercy Hospital & Medical Center*, 2020 IL 125219. Metra's motion asserted that *Dameron* expressly overruled the caselaw that was the basis of Horn's objection to Metra's motion to quash the subpoena to Subrosa (specifically, *Shields v. Burlington Northern & Santa Fe Ry.*, 353 Ill. App. 3d 506 (2004), and *Neuswanger v. Ikegai America Corp.*, 221 Ill. App. 3d 280 (1991)). Alternatively, Metra asked that the court hold it "in friendly contempt for declining

to produce the documents at issue, and allow Metra to file the disputed documents *** under seal, in anticipation of an immediate appeal."

¶ 8    In February 2021, the trial court issued an order denying Metra's motion to reconsider and ordering Metra to produce the unredacted Subrosa Documents to Horn. In March 2021, the trial court entered an order granting Metra's motion for an order finding Metra in friendly contempt for its refusal to produce the Subrosa Documents to Horn and imposing a monetary penalty of $50.

¶ 9    This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11    This case involves nothing more than a pretrial discovery order, and discovery orders usually are not appealable. *Dameron*, 2020 IL 125219, ¶ 19 (citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001)). However, the correctness of a discovery order may be tested through a contempt proceeding. *Id.* (citing *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002)). When, as in this case, an individual is subject to a contempt sanction imposed for violating, or threatening to violate, a discovery order, "the contempt finding is final and appealable and presents to the reviewing court the propriety of that discovery order." *Reda*, 199 Ill. 2d at 54. When a discovery order is appealed, we usually afford considerable discretion to the trial court and disturb its rulings only for an abuse of that discretion, such as when its ruling is arbitrary, fanciful, or unreasonable. *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 75. However, "the applicability of a statutory evidentiary privilege, and any exceptions thereto, are matters of law subject to *de novo* review." *Reda*, 199 Ill. 2d at 54. This case requires us to determine whether the privilege afforded by Rule 201(b)(3) to a consultant's work product applies in this case as well as the scope of that privilege, *i.e.*, whether there is an exception to the

privilege for purely factual information such as video recordings. These are all questions of law subject to *de novo* review. *Id.*; *Norskog*, 197 Ill. 2d at 70-71.

¶ 12    The only discovery rule at issue in this case is Rule 201(b)(3). Rule 201(b)(3) reads as follows:

> "*Consultant*. A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial. The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014).

As the basis of Metra's second motion to reconsider, which the trial court denied leading to the imposition of the finding of contempt, and because it is the most recent, and to some extent only, pronouncement on the questions raised by this appeal, this case is controlled by our supreme court's holdings in *Dameron*.

¶ 13    In *Dameron*, the plaintiff disclosed a doctor as a controlled expert witness pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007). *Dameron*, 2020 IL 125219, ¶ 4. The disclosure of the doctor as a controlled expert included only the doctor's identity but not the results of testing the doctor would later perform on the plaintiff. *Id.* After the doctor performed the tests, the plaintiff sought to withdraw the doctor as a controlled expert and to redesignate him a consultant within the meaning of Rule 201(b)(3). The plaintiff also affirmatively sought to preclude discovery of the doctor's opinions and facts known by the doctor absent a showing of exceptional circumstances under Rule 201(b)(3). *Id.* ¶ 6. The trial court denied the plaintiff's motion to redesignate the doctor as a consultant and ordered the plaintiff to produce the doctor's

records. *Id.* ¶ 8. The appellate court reversed. *Id.* ¶ 9. Our supreme court affirmed the appellate court's order reversing the trial court. *Id.* ¶ 53.

¶ 14    First, our supreme court held the doctor was not the plaintiff's treating physician. See *id.* ¶¶ 21-26. Our supreme court relied on this court's decision in *Cochran v. Great Atlantic & Pacific Tea Co.*, 203 Ill. App. 3d 935 (1990), for the proposition that " '[w]hether a physician is a treating physician or an expert depends on the physician's relationship to the case, not the substance of his testimony. *** A treating physician is one consulted for treatment. An expert is one consulted for testimony.' " *Dameron*, 2020 IL 125219, ¶ 24 (quoting *Cochran*, 203 Ill. App. 3d at 940-41). The court found that the doctor in *Dameron* "was consulted for testimony," not treatment. *Id.* ¶ 25. Having found the doctor was not the plaintiff's treating physician our supreme court turned to the question of whether the plaintiff could redesignate the doctor from a Rule 213(f)(3) controlled expert witness to a Rule 201(b)(3) "expert consultant." *Id.* ¶ 28.

¶ 15    Our supreme court held that the plaintiff could redesignate the doctor "as an expert consultant." *Id.* ¶ 34. The court found that the rules do not prohibit changing "a witness's designation" and caselaw has found that a party may abandon a prior designation of a disclosed expert witness if done so in a reasonable amount of time before trial. *Id.* ¶ 29. The court rejected the argument that once the plaintiff disclosed the doctor as a controlled expert the plaintiff was required to turn over his test results and opinions before abandoning him as an expert. See *id.* ¶ 30. The court found that such disclosure was not a prerequisite to the plaintiff's ability to abandon the expert and that the redesignation would not cause the defendant unfair surprise at trial because the defendant "had almost a year of advance notice" the doctor would not be testifying as an expert witness. *Id.* ¶ 31.

¶ 16    More importantly to this case, our supreme court also held the plaintiff could redesignate the doctor as a consultant because the plaintiff never disclosed the doctor's report. The court held that "because [the plaintiff] never disclosed [the doctor's] report to [the] defendants, it cannot be said that [the] defendants came to rely upon [the doctor] being called as a witness or were prejudiced by his withdrawal." *Id.* ¶ 32. This is true regardless of whether the expert's name has been disclosed. Our supreme court relied on the federal district court's decision in *Davis v. Carmel Clay Schools*, No. 1:11-cv-00771-SEB-MJD, 2013 WL 2159476, at *5-7 (S.D. Ind. May 17, 2013), interpreting the corresponding federal discovery provision, for the proposition that both the disclosure of the name of the expert as well as the expert's required report is necessary to fully disclose a testifying expert. *Dameron*, 2020 IL 125219, ¶ 32 (citing *Davis*, 2013 WL 2159476, at *7). However, "once an expert's report is disclosed to the opposing party, that expert may no longer be shielded from discovery." *Id.* (citing *Davis*, 2013 WL 2159476, at *5-7). The court concluded that, "[b]ecause [the doctor] was only partially disclosed as an expert witness, [the plaintiff's] timely redesignation of [the doctor] as an expert consultant does not run afoul of our rules, offend the aims of discovery, or cause defendants unfair surprise. Thus, [the plaintiff's] redesignation of [the doctor] is permissible." *Id.* ¶ 34.

¶ 17    Next, the *Dameron* court rejected the defendants' argument that Rule 201(b)(3) only protects "core work product" that "reveals the consultant's mental impressions, opinions, or strategy," but that "any objective factual information generated" is discoverable. See *id.* ¶ 37. The defendants relied on two cases from this court: *Shields* and *Neuswanger*. *Id.* ¶ 38. Both of those cases held that "videotapes made by a consulting expert did not constitute work product and thus were subject to disclosure." *Id.* Our supreme court expressly overruled those cases and rejected the rationale used that distinguished between "the objective evidence relied upon" by the

consultant and the consultant's mental impressions, opinions, or other material containing the consultant's "conceptual input." See *id.* ¶¶ 37-40, 45. In other words, the court rejected interpreting "work product" for purposes of Rule 201(b)(3) in the same manner as attorney work product. See *id.* ¶ 40.

¶ 18    The *Dameron* court found that Rule 201(b)(3) "protects more than ordinary work product." *Id.* ¶ 41. The court noted that both the language of the rule and the committee comments to the rule state that the rule contemplates protection of not only a consultant's opinions in the first instance but also the facts informing the consultant's opinions, *i.e.*, objective data. *Id.* ¶¶ 40, 43. The court also found that the examples of exceptional circumstances cited by the committee comments demonstrate that "Rule 201(b)(3) contemplates an interpretation more *in line* with federal law" (emphasis added) (*id.* ¶ 43), and under the federal rule, " 'a party may not *** discover facts known or opinions held by an expert who has been retained or specially employed by another party *** who is not expected to be called as a witness at trial.' " *Id.* (quoting Fed. R. Civ. P. 26(b)(4)(D)).

¶ 19    On the question of extraordinary circumstances, our supreme court stated that "the issue is *** whether 'it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means.'" *Id.* ¶ 48 (quoting Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014)). The burden is on the party seeking the discovery to show exceptional circumstances. See *id.* ¶¶ 47-48. A conclusory statement the party is unable to obtain the same information is not enough. *Id.* ¶ 48. It is impracticable to obtain the same information when the information is destroyed by testing by the consultant or where no other source for the information readily exists. See *id.* The court rejected the assertion that its holding would promote impermissible gamesmanship because to hold otherwise on that basis would require speculation by the court as

to the opposing party's motive and because the party seeking the discovery is free to attempt to show that exceptional circumstances warrant disclosure of the information. *Id.* ¶¶ 49-50. The court concluded that the doctor was properly redesignated as a Rule 201(b)(3) consultant and the plaintiff was not required to turn over the concrete factual data contained in the doctor's report because "Rule 201(b)(3) protects not only conceptual data but also factual information." *Id.* ¶ 52.

¶ 20    With this analytical framework as our guide we now turn to Horn's arguments in support of discovery of the Subrosa Documents in this case. First, Horn argues that the privilege does not apply because Subrosa does not qualify as a consultant under Rule 201(b)(3) and, second, Horn argues that if Subrosa is a consultant under Rule 201(b)(3), Horn has demonstrated exceptional circumstances to justify disclosure of the Subrosa Documents. We address each argument in turn.

¶ 21                    A. Subrosa Is a Consultant Under Rule 201(b)(3)

¶ 22    Horn argues Subrosa is not a consultant within the meaning of Rule 201(b)(3) because Metra has disclosed its identity and provided Metra with the videos and photographs Subrosa made in its investigation, which Horn asserts is inconsistent with Metra's claim Subrosa is a consultant subject to the Rule 201(b)(3) privilege. (We note, however, on appeal Metra has explained its disclosure as consistent with then-applicable caselaw that our supreme court expressly overruled in *Dameron*.) Horn cites no legal support for this position and cites only to Metra's discovery responses that it was in possession of photographs and videos depicting Horn's activities and who made them and disclosing the videos and photographs in response to Horn's request to produce. On the specific question of whether the party is a consultant within the meaning of Rule 201(b)(3), Horn argues the partial disclosure indicates Metra did not consider Subrosa a "consultant," Metra's clear intent is to use the facts in the Subrosa

Documents at trial, and that this (somehow) "eliminate[s] any privilege and permit[s] disclosure of the summaries and reports." Horn argues the partial disclosure "makes it impossible to claim Subrosa is merely a consultant." Horn also argues Metra cannot claim a privilege for "some of a file while producing other parts of the file it wants to use at trial." Horn argues that the partial disclosure and clear intent to use the partially disclosed materials at trial results in Metra being unable to claim the privilege.

¶ 23    Horn's argument that Metra's "partial" disclosure of information Subrosa generated destroys the Rule 201(b)(3) privilege is belied by our supreme court's holdings in *Dameron*. In *Dameron*, our supreme court found "compelling" the *Davis* court's holding that " ' "both the disclosure of the name of the expert as well as the expert's required report is necessary to fully disclose a testifying expert." ' " *Id.* ¶ 32 (*Dameron v. Mercy Hospital & Medical Center*, 2019 IL App (1st) 172338, ¶ 25, quoting *Davis*, 2013 WL 2159476, at *7). Because there was no disclosure of any testimony or opinions of the witness and the party seeking the discovery in *Davis* had not shown any reliance on the disclosure of the witness as a testifying expert that would result in any prejudice, the *Davis* court held that the only means by which the party seeking discovery would be entitled to conduct discovery of the witness would be the exceptional circumstances exception. *Id.* The *Dameron* court found the defendants in that case similarly "never received [the doctor's] report" and "could not have come to meaningfully rely on [the doctor's] participation at trial." See *id*.

¶ 24    In this case, Horn does not, and cannot, argue that the disclosure of the videos and photographs are equivalent to disclosure of a required Rule 213(f)(3) report. Rule 213(f)(3) requires disclosure of "the conclusions and opinions of the witness and the bases therefor." Ill. S. Ct. R. 213(f)(3)(ii) (eff. Jan. 1, 2018). The videos and photographs might constitute the bases for

any impressions or opinions of Subrosa, but they are not its "conclusions and opinions." The *Davis* court held that once an expert's report is disclosed that expert may no longer be shielded from discovery. *Dameron*, 2020 IL 125219, ¶ 32. Our supreme court held that "a party should be able to change its mind regarding who it presents as an expert witness where the requisite Rule 213(f)(3) report has not yet been disclosed." *Id.* ¶ 33. The *Davis* court recognized that where there has been no disclosure of any testimony or opinions by the expert in the form of a report, once the expert is redesignated as a consultant the only means by which the opposing party may obtain discovery is through the exceptional circumstances exception. *Id.* In this case, we find there has been no disclosure of any impressions or conclusions by Subrosa and it has at most only been "partially disclosed." Therefore, Horn's designation of Subrosa as a consultant "does not run afoul of our rules, offend the aims of discovery, or cause defendants unfair surprise" and is, therefore, permissible. See *id.* ¶ 34.

¶ 25 Pursuant to *Dameron*, Metra's designation of Subrosa as a consultant is permissible and effective to shield Subrosa from discovery. See *id.* ¶¶ 34, 52 (finding redesignation permissible and, for that reason, holding the plaintiff was not required to turn over the factual data in the doctor's report). Because there has been no disclosure of any material from Subrosa such that the witness may no longer be shielded from discovery pursuant to Rule 201(b)(3) (see *id.* ¶ 32 (citing *Davis*, 2013 WL 2159476, at *7)), like the defendants in *Dameron* who were not entitled to the results of the doctor's tests without a showing of exceptional circumstances (*id.* ¶ 45), Horn is not entitled to discovery of the Subrosa Documents absent exceptional circumstances.

¶ 26 Horn also argues it would unfairly disadvantage him to permit Metra to utilize the privilege because "there is undoubtedly information contained within the Subrosa Documents which is discoverable and would be used to surprise Mr. Horn at trial." Horn claims he seeks the

summaries and communications by Subrosa "to have a full understanding of the impressions created" by the already disclosed videos and without them use of the videos at trial creates a substantial risk to Horn, which discovery is intended to avoid. Horn argues that nothing indicates Metra intended to attempt to "claw back" the videos, which it could have, further evincing its intent to use them at trial. Horn argues the privilege only applies if the videos are not used at trial. See *Wiker v. Pieprzyca-Berkes*, 314 Ill. App. 3d 421, 429-30 (2000).

¶ 27     Having found the privilege applies, the issue is not whether the Subrosa Documents contain facts or opinions but whether exceptional circumstances exist to justify an exception to the privilege to require production. See *Dameron*, 2020 IL 125219, ¶ 48 ("Again, the issue is not whether the information is of a concrete or conceptual nature but whether 'it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means.' "). Our supreme court identified the pertinent issue with regard to whether exceptional circumstances exist is "whether 'it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means.' " *Id.* (quoting Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014)). We address this question separately below. Furthermore, whether Metra at one time considered Subrosa a witness and not a consultant is of no moment. Our supreme court found persuasive the finding that

> "to fully disclose a testifying expert under Federal Rule of Civil Procedure 26, ' "both the
> disclosure of the name of the expert as well as the expert's required report is necessary." '
> [Citation.] Until such time, ' "parties are entitled to change their minds and decide not to
> use an expert to testify at trial." ' " *Id.* ¶ 9 (quoting *Dameron*, 2019 IL App (1st) 172338,
> ¶ 25, quoting *Davis*, 2013 WL 2159476, at *7).

¶ 28 Finally, Horn's argument the privilege only applies if Metra does not use the facts on which its consultant relied—in this case, the videos and photographs—at trial is premature. For purposes of this appeal, following *Dameron*, Rule 201(b)(3) protects both a consultant's opinions as well as the facts—in this case videos and photographs—on which those opinions are based from pretrial discovery if the consultant is not to be called to testify. Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014); *Dameron*, 2020 IL 125219, ¶ 43 ("the rule contemplates protection of not only a consultant's opinions in the first instance but also the facts informing the consultant's opinions, *i.e.*, objective data"). The argument is premature because, while we agree the videos and photographs—which Horn already has in his possession—are discoverable under Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) if Metra intends to use them at trial, at this stage of proceedings whether or not Metra intends to do so is a matter of pure speculation. If and when Metra decides to use the videos and photographs as substantive evidence, both its continuing disclosure obligation under Illinois Supreme Court Rule 213(f)(3)(i) (eff. Jan. 1, 2018) and the normal rules of evidence will apply to protect Horn from unfair surprise. See *Velarde v. Illinois Central R.R. Co.*, 354 Ill. App. 3d 523, 530 (2004) ("the court found that the standard two-prong test for admissibility of evidence such as still photographs, when and if the plaintiff offered the film into evidence at trial, would adequately protect the defendants").

¶ 29 Next, Horn argues *Dameron* is distinguishable because that case addresses "expert consultants" and Subrosa is not an "expert" under Illinois Rule of Evidence 702 (eff. Jan. 1, 2011). Horn also argues that the parallel federal rule only applies to "expert" consultants. To distinguish *Dameron* on the basis of "expert" consultants compared with "consultants," Horn contends "[t]he clear intent of *Dameron* was to permit an expert consultant's material to remain confidential." Horn relies on our supreme court's labelling the consultant in that case an "expert

consultant" and Federal Rule of Civil Procedure 26(b)(4)(D), which we recognize as the parallel federal rule to our rule, and claims that the federal rule, "by its terms, only applies to 'Expert[s] Employed Only for Trial Preparation.' Fed. R. Civ. P. 26(b)(4)(D)."

¶ 30    Admittedly, the *Dameron* court repeatedly referred to the doctor in that case as an "expert consultant." However, nothing in its discussion of the rule itself designated the persons to whom it applies as limited to "experts" as defined by the Illinois Rules of Evidence. In fact, the substantive discussions of the rule do not refer to "expert consultants" but merely to "consultants." See *Dameron*, 2020 IL 125219, ¶¶ 36-52. Regardless, Horn's argument fails because *Dameron* does not support it. Nothing in *Dameron* suggests our supreme court intended Illinois's rule to be interpreted identically as the federal rule. The differences in the language of the two rules counsels against such a conclusion. Compare Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014), with Fed. R. Civ. P. 26(b)(4)(D); *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 48. ("Although we have noted that Pennsylvania's interpretation of its statute is relevant to our own analysis of the Act, we have also repeatedly distinguished it where it departs from the Act's language and structure."). Most notably, Rule 201(b)(3) defines "consultant" for purposes of the rule whereas Rule 26 does not further define what constitutes "an expert who has been retained *** to prepare for trial." See Fed. R. Civ. P. 26(b)(4)(D). The definition of "consultant" for purposes of Rule 201(b)(3) broadly includes any "person who has been retained or specially employed in anticipation of litigation or preparation for trial." Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014). We find that Rule 201(b)(3) is not limited in its scope to consultants who could testify as expert witnesses pursuant to Illinois Rule of Evidence 702 (eff. Jan. 1, 2011).

¶ 31    We hold Subrosa is a consultant within the meaning of Rule 201(b)(3) and the privilege afforded Subrosa's work product by that rule applies in this case. Therefore, to obtain the Subrosa Documents, Horn had to demonstrate exceptional circumstances.

¶ 32                    B. Horn Has Not Demonstrated Exceptional Circumstances

¶ 33    Alternatively, Horn argues exceptional circumstances exist because it is "impossible for him to obtain a factual record of all the actions listed in the summaries and communications which were not recorded in the videos or photographs" because he did not "keep a diary of his daily activities during that period." Thus, he argues, this case is distinguishable from *Dameron* because the facts, specifically evidence of his physical activities in Subrosa's summaries, as distinguished from his physical health, cannot be replicated. Horn claims his physical actions may create "impressions" Metra could use at trial of which he is not aware. Finally, Horn argues that those specific additional actions Subrosa observed and reported are not accessible in the public domain nor equally available to both parties and are, therefore, discoverable under *Wiker*.

¶ 34    First, we find Horn's reliance on *Wiker* misplaced. The *Wiker* court held that because a videotape of the plaintiff was not in the public domain, the defendant would be obligated to disclose the video in order to use it at trial. *Wiker*, 314 Ill. App. 3d at 430. However, Horn cites to nothing beyond his own speculation Metra intends to use the video or Subrosa's summaries of those videos at trial to merit consideration of this issue at this stage. Moreover, the fact Horn's memories of his activities are not in the public domain is irrelevant. *Wiker* is inapposite because the question of whether Metra intends to use the videos and photographs, or the summaries thereof, at trial has not arisen. See *id.* ("In this case, however, the defendant did not use the videotape as evidence. Accordingly, we do not think that she was obligated to disclose the videotape [pursuant to Rule 201(b)(3)]."). For now, the video and summaries are privileged

under Rule 201(b)(3) as the work product of Metra's consultant. *Supra* ¶ 31. Additionally, Subrosa's reports and summaries reflect its mental impressions, opinions, or other material containing the consultant's "conceptual input" on the objective videos and photographs and are privileged from disclosure. See *Dameron*, 2020 IL 125219, ¶¶ 37-40, 45. The fact these summaries may reflect Subrosa's "impressions" about Horn does not destroy the privilege, it is the reason the privilege exists. See *id.* ¶ 44 (listing policy considerations for protecting the information).

¶ 35     Second, we find it is not "impracticable" within the meaning of Rule 201(b)(3) for Horn to obtain the information contained in the videos or summaries and communications. In *Dameron*, our supreme court expressed "the great level of protection the rule is meant to afford." *Id.* ¶ 42. As a representative example of extraordinary circumstances that would give rise to the exception to the Rule 201(b)(3) privilege, the *Dameron* court found that "where an item of physical evidence would no longer be available due to destructive testing and a party could not obtain information about the destroyed item from any other source but the adversary's consultant who performed the destructive testing, exceptional circumstances exist to justify discovery of the information." *Id.* ¶ 43. The court also noted several policy considerations that exist for protecting the information. *Id.* ¶ 44. In light of these expressions of the degree of protection Rule 201(b)(3) provides, we cannot find extraordinary circumstances in this case. Certainly, Horn's activities on the dates in question are known to Horn. His memory, while it might be tested, has not been destroyed. Horn offers "nothing more than a conclusory statement that they are unable to obtain the same information," which is insufficient to demonstrate exceptional circumstances. *Id.* ¶ 48.

¶ 36     We hold Horn has not demonstrated exceptional circumstances and, therefore, Metra is not obligated to disclose the Subrosa Documents.

¶ 37    Horn's argument the record is insufficient because it does not contain the trial court's reasoning for enforcing Horn's subpoena is unpersuasive in light of our standard of review.

¶ 38    The trial court's judgment is reversed in part, the finding of contempt is vacated, and the cause is remanded for further proceedings.

¶ 39                                III. CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed in part, vacated in part, and remanded.

¶ 41    Reversed in part, vacated in part, and remanded.

**No. 1-21-0268**

| | |
|---|---|
| **Cite as:** | *Horn v. Northeast Illinois Regional Commuter Ry. Corp.*, 2022 IL App (1st) 210268 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-2002; the Hon. Moira S. Johnson, Judge, presiding. |
| **Attorneys for Appellant:** | Catherine B. Weiler, of Swanson, Martin & Bell, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | George T. Brugess and Sara M. Davis, of Cogan & Power, P.C., of Chicago, for appellee. |