PERCY SHIELDS, Plaintiff-Appellee, v. BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Defendant-Appellant (Richard T. Sikes, Jr., Contemnor-Appellant).

First District (6th Division) No. 1—03—2506

Opinion filed October 22, 2004.

Freeborn & Peters, L.L.P., of Chicago (Richard T. Sikes, Jr., and Charles W. Webster, of counsel), for appellants.

Brown & Associates, of Belleville (Terry N. Brown and William F. Kopis, of counsel), and Christopher Mullen, of Mullen, Minella & Kelliher, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Richard Sikes, an attorney for Burlington Northern & Santa Fe Railway Company, appeals from an order holding him in contempt for refusing to respond to discovery concerning Burlington's surveillance of Percy Shields, the plaintiff in this personal injury litigation. We hold that no privilege prevents discovery of any videotape or film of plaintiff's activities taken during such surveillance. We affirm the trial court's order directing Burlington to produce any such videotapes or films.

## BACKGROUND

In his complaint plaintiff alleged that on August 17, 2000, while he worked for Burlington, he suffered injury in a car accident near railroad yards. He sued Hammer Express, owner of the car that hit the one in which plaintiff rode, and Burlington. Plaintiff served interrogatories on Burlington asking Burlington to "[i]dentify all persons who have followed and in any way conducted surveillance of plaintiff on behalf of the defendant since the incident(s) described in plaintiff's Complaint." Plaintiff also sought production of "[a]ny and all reports, films, or other documents concerning any surveillance of plaintiff or investigation of plaintiff's activities."

Burlington objected that plaintiff, in the interrogatory and document request, sought privileged work product not subject to discovery until Burlington decides to use it at trial. Because Burlington had not yet decided whether to use any such material in its possession, Burlington argued that it had no duty to answer the interrogatory or produce the material. Burlington added, "if any surveillance material is to be used at trial, it will be disclosed to plaintiff a sufficient time in advance of trial to allow plaintiff to prepare for the admission of such evidence."

Plaintiff moved to compel answers to the interrogatory and the

document request. The trial court granted the motion on June 16, 2003. Sikes advised the court that Burlington refused to respond to the interrogatory and the document request. On July 23, 2003, the court found Sikes in contempt of court and fined him $100, with payment stayed pending appeal of the order. Burlington and Sikes filed this timely appeal.

## ANALYSIS

■ "The circuit court retains great latitude in defining the scope of discovery. [Citation.] A discovery order will not be disturbed absent abuse of discretion, although the court does not have discretion to compel disclosure of privileged information or that otherwise exempted by statute or common law." *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 553 (1998). Because Burlington claimed that the work product privilege exempted from disclosure the material sought, we review the court's order *de novo. In re D.H.*, 319 Ill. App. 3d 771, 773 (2001); *Midwesco-Paschen Joint Venture for the Viking Projects v. Imo Industries, Inc.*, 265 Ill. App. 3d 654, 660 (1994). As the party asserting a privilege, Burlington bears the burden of proving facts that give rise to the privilege. *Mlynarski v. Rush-Presbyterian-St. Luke's Medical Center*, 213 Ill. App. 3d 427, 431 (1991).

■ Burlington asserts that Supreme Court Rules 201(b)(2) and (b)(3) protect the material plaintiff seeks. Those rules provide:

"Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney. ***

*** A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial. The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." 166 Ill. 2d Rs. 201(b)(2), (b)(3).

Burlington claims that any surveillance tapes or films prepared either by Burlington or by any videographer working for Burlington count as "work product," "prepared by or for a party in preparation for trial."

■ In *Monier v. Chamberlain*, 35 Ill. 2d 351, 359-60 (1966), our supreme court held that the work product privilege protects

"only those memoranda, reports or documents which reflect the employment of the attorney's legal expertise, those 'which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience,' (Miller, Recent Discovery, 1963 U. of Ill. L.F., 666, 673[)] ***.

Thus, memoranda made by counsel of his impression of a prospective witness *** [are] exempt from discovery ***. Other material, not disclosing such conceptual data but containing relevant and material evidentiary details must, under our discovery rules, remain subject to the truth-seeking processes thereof."

Thus, "[a]s properly understood, *** [the work product] rule does not protect material and relevant evidentiary facts from the truth-seeking processes of discovery." *Stimpert v. Abdnour*, 24 Ill. 2d 26, 31 (1962).

■ Videotapes of a plaintiff in a personal injury suit include relevant, admissible substantive evidence concerning the extent of the plaintiff's injuries and continuing disability. As the federal court held, in a case Burlington cites:

"[T]he weight of authority favors discoverability of surveillance information, principally because such information is probative of a critical issue in a personal injury case—the physical condition of the plaintiff. [Citations.] Disclosure of this information *** makes a trial 'less a game of blind man's b[l]uff and more a fair contest,' *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success. [Citation.] Discoverability of surveillance information will serve the collateral interests identified by other courts, including concerns for authenticity, encouraging settlement, *** and fairness." *Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 159 (N.D. Iowa 1994).

Thus, the majority of courts that have addressed the issue have permitted discovery of surveillance films and videotapes. Annotation, W. Wakefield, *Photographs of Civil Litigant Realized by Opponent's Surveillance As Subject to Pretrial Discovery*, 19 A.L.R. 4th 1236 (1983).

Illinois law supports discovery of videotapes prepared by consultants in preparation for litigation. In *Neuswanger v. Ikegai America Corp.*, 221 Ill. App. 3d 280 (1991), an expert made a videotape showing his tests on the operation of the machine that injured the plaintiff. The plaintiff sought the videotape in discovery, and the court entered a finding of contempt when the plaintiff did not receive the tape as ordered. The appellate court affirmed the order requiring production of the videotape, with appropriate deletions from the soundtrack for anything the expert said that revealed his thought processes and theories. The court explained:

"[W]here the material gathered or produced by an attorney or expert is of a more concrete nature *** and does not expose the attorney's or expert's mental processes, it serves the judicial process and [it] is not unfair to require the parties to mutually share such material and analyze it prior to trial.

\*\*\* Atlantic Mutual argues that a videotape discloses an expert's thought processes and case evaluation by the movement, angle, distance and duration of focussing on various aspects of the expert's field investigation. However, such subtleties do not convince us that the videotape is thus transmuted into 'core work product' or 'conceptual data' in need of protection.

Moreover, to the extent that an expert's mental processes would be exposed in the manner suggested, we believe that the same could be said with respect to a tape-recorded interview. \*\*\* [J]ustice is best served by full and fair disclosure and \*\*\* any interest that the party recording a conversation, surreptitiously or otherwise, may have in denying production of a defendant's taped conversation must fall to the overriding judicial interest in finding the truth. \*\*\*

In our opinion, the truth-seeking interest in a civil case is sufficiently compelling to require disclosure of [the] consulting expert's videotaped field investigation without a showing of exceptional circumstances." *Neuswanger*, 221 Ill. App. 3d at 285-86.

That is, because the sound deletions would prevent the revelation of any protected conceptual data, the videotape did not constitute "work product" within the meaning of discovery rules. "[T]he video tape, while possibly disclosing some of the experts' thought processes through angle or focus, was not the type of opinion or theory that constitutes protected work product." *Midwesco-Paschen*, 265 Ill. App. 3d at 668. Insofar as the videotape included substantial evidence concerning the operation of the machine at issue, our broad discovery rules demanded its production.

Burlington contends that the decision in *Wiker v. Pieprzyca-Berkes*, 314 Ill. App. 3d 421 (2000), exempts its videotapes from production. In *Wiker* the plaintiff sought to recover for injuries she suffered in a car accident. She requested any videotape the defendant may have taken of her. The defendant did not produce any videotape in response. Although the defendant had made a surveillance videotape, the defendant did not use it at trial. The jury found the defendant not liable for the plaintiff's injuries.

The appellate court held that the failure to disclose the videotape did not warrant reversal of the judgment, finding that "the person hired to make the surveillance video qualifies as a consultant under this rule, so long as he or she and the video are not presented at trial." *Wiker*, 314 Ill. App. 3d at 430. The court added that "the defendant would have been obligated to disclose the video in order to use it at trial, even for cross-examination." *Wiker*, 314 Ill. App. 3d at 430. Although the court reversed the judgment on other grounds, it did not address the question of whether the defendant would need to produce the videotape in discovery on remand.

The court in *Wiker* did not overrule *Neuswanger* or *Midwesco-Paschen*. The court did not hold that the videotape constituted protected work product under the rule, nor did the court discuss how the surveillance videotape would reveal any protected "mental impressions, opinions, or trial strategy." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 196 (1991). *Wiker* does not compel reversal of the court's order for production of the surveillance videotapes here.

Burlington also asks us to adopt one federal case that rejects the majority rule. In *Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145 (S.D. Ind. 1993), the plaintiff requested surveillance videotapes. After the defendant deposed the plaintiff, the defendant identified and produced one videotape it intended to use at trial, but the defendant "reserv[ed] the right to designate other videotape[s] for use at trial" (*Fisher*, 152 F.R.D. at 148), if it chose later to use any such tapes. The plaintiff sought production of all the videotapes.

The court characterized the request as one for "non-evidentiary surveillance films." *Fisher*, 152 F.R.D. at 150. The court acknowledged that courts generally had

> "allowed discovery of all surveillance films, including the non-evidentiary tapes, prior to trial. *E.g., Boyle v. CSX Transp., Inc.*, 142 F.R.D. 435, 437 (S.D.W. Va. 1992); *Daniels v. National R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986); *Martin v. Long Island R.R. Co.*, 63 F.R.D. 53 (E.D.N.Y. 1974); *Dodson v. Persell*, 390 So. 2d 704 (Fla. 1980); *Jenkins v. Rainner*, 69 N.J. 50, 350 A.2d 473 (1976); *Olszewski v. Howell*, 253 A.2d 77 (Del. 1969); *Suezaki v. Superior Court*, 58 Cal. 2d 166, 23 Cal. Rptr. 368, 373 P.2d 432 (1962)." *Fisher*, 152 F.R.D. at 150.

Because the defendant had prepared the videotapes in anticipation of litigation, the tapes constituted "work product" within the federal rules. Under those rules, the plaintiff had the right to obtain the work product only on a showing of substantial need. *Fisher*, 152 F.R.D. at 151. According to the court, the plaintiff did not need the videotapes as substantive evidence of his injuries or for impeaching the defendant's evidence, and therefore the court held that the plaintiff did not carry his burden of showing sufficient need.

We find *Fisher* unpersuasive. First, it applies a federal definition of "work product" that broadly protects all materials prepared for trial, even if the materials do not reveal any mental processes or other such conceptual data. Our supreme court expressly rejected the federal definition of "work product" and deliberately narrowed the scope of the protection the work product doctrine provides. *Monier*, 35 Ill. 2d at 361. Second, the court in *Fisher* analyzed the case as one involving

"non-evidentiary surveillance films" even though the defendant expressly "reserv[ed] the right" to use the films at trial. The court's analysis treated the films as if the defendant had agreed to an order precluding it from using any of the purportedly "non-evidentiary" materials at trial. Unsurprisingly, *Fisher* stands contrary to the weight of authority, even the authority cited in *Fisher* itself. We follow *Neuswanger*, an appropriate application of the principles announced in *Monier*, and not *Fisher*.

Finally, Burlington argues that it must conceal from plaintiff, at least through his deposition, whether it has videotapes and what the videotapes reveal because it might lose the impeachment value of the videotapes. Burlington posits that plaintiff will tailor his testimony to the abilities shown in the videotapes.

We do not see any material distinction between surveillance videotapes, with their substantive evidence of the plaintiff's physical limitations, and tape-recorded or transcribed statements from witnesses, or data collected from attempts to recreate an accident. All such evidence can have powerful impeaching effect if one party can conceal it from the other, at least through the depositions of the parties and their principal witnesses. When defense witnesses learn of the statements of a plaintiff's witnesses concerning the manner in which an accident occurred, the defense witnesses can tailor their testimonies to explain what those witnesses saw in a manner that might exonerate the defendant. Concealing substantive evidence from the opposing party always gives a tactical advantage, and it often permits greater impeachment of the opposite party's witnesses. Full discovery, demanded by supreme court rules, allows each party's witnesses to tailor their testimony to the opposite party's evidence. We see no reason to deviate from the policy of full disclosure here, as we see no need for special treatment of the substantive evidence in a surveillance videotape. Because surveillance videotapes constitute substantive evidence and not work product within the meaning of discovery rules, we find that the trial court correctly ordered Burlington to produce any surveillance videotapes of plaintiff.

However, we agree with the court in *Wiker* that the videographer counts as a consultant within the meaning of Rule 201(b)(3), as long as he is not to be called as a witness at trial. In the interrogatory plaintiff requested that Burlington "[i]dentify all persons who have followed and in any way conducted surveillance of plaintiff on behalf of the defendant since the incident(s) described in plaintiff's Complaint." Rule 201 requires a showing of "exceptional circumstances" before the court orders disclosure of the identity of a consultant who is not to testify. We find no argument in plaintiff's brief and

no argument in the trial court that purports to show exceptional circumstances requiring disclosure of the videographer's identity. Therefore, we reverse the order directing Burlington to identify the videographer and we remand for further proceedings on the issue of the need for disclosure of that identity.

■ Surveillance videotapes contain substantive evidence concerning the extent of a plaintiff's injuries, and they do not reveal mental processes, opinions or other conceptual data. Thus surveillance videotapes do not count as work product, and the trial court correctly ordered Burlington to produce its surveillance videotapes in response to discovery. We affirm that part of the trial court's order. But the court also ordered Burlington to identify the videographer, without any discussion or evidence of exceptional circumstances needed to support such an order. We reverse the order insofar as it requires revelation of that identity and remand for further proceedings on that issue. We also reverse the imposition of the fine. The attorney can purge himself of contempt by producing the videotapes. See *Neuswanger*, 221 Ill. App. 3d at 287.

Affirmed in part and reversed in part; cause remanded.

FITZGERALD SMITH, P.J., and TULLY, J., concur.