2019 IL App (1st) 172338

Fifth Division

March 15, 2019

No. 1-17-2338

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| ALEXIS DAMERON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County. |
| | ) |
| v. | ) |
| | ) No. 2014 L 11533 |
| MERCY HOSPITAL AND MEDICAL CENTER, an | ) |
| Illinois Not-For-Profit Corporation, Individually and By | ) Honorable |
| and Through Its Agents, Servants and/or Employees; | ) William E. Gomolinski, |
| CORDIA CLARK-WHITE, M.D., Individually and as | ) Judge Presiding. |
| Agent, Servant and Employee of Mercy Hospital and | ) |
| Medical Center; ALFREDA HAMPTON, M.D., | ) |
| Individually and as Agent, Servant and/or Employee of | ) |
| Mercy Hospital; NATASHA HARVEY, M.D., | ) |
| Individually and as Agent, Servant and Employee of | ) |
| Mercy Hospital; ERICA TAYLOR, M.D., Individually | ) |
| and as Agent, Servant and/or Employee of Mercy | ) |
| Hospital; PATRICIA COURTNEY, Individually and as | ) |
| Agent, Servant and/or Employee of Mercy Hospital; | ) |
| MARY CAHILL, Individually and as Agent, Servant | ) |
| and/or Employee of Mercy Hospital; GENEVIEVE | ) |
| LANNING, Individually and as Agent, Servant and/or | ) |
| Employee of Mercy Hospital; and JAYLEN SHEARER, | ) |
| Individually and as Agent, Servant and/or Employee of | ) |
| Mercy Hospital, | ) |
| | ) |
| Defendants | ) |
| | ) |
| (Mercy Hospital and Medical Center; Cordia Clark-White, | ) |
| M.D.; Alfreda Hampton, M.D.; Natasha Harvey, M.D.; | ) |
| and Patricia Courtney, | ) |
| | ) |

No. 1-17-2338

Defendants-Appellees).                    )
                                          )

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment and the opinion.

**OPINION**

¶ 1     This is an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). The plaintiff, Alexis Dameron, was held in contempt[1] for refusing to comply with a discovery order of the circuit court of Cook County. The order at issue required the plaintiff to disclose to the defendants the report of a nontestifying medical expert.

¶ 2     On appeal, plaintiff contends that the trial court erred when it denied her motion to redesignate her expert witness a consultant and ordered her to produce the expert witness' report.

¶ 3                                    BACKGROUND

¶ 4     On November 6, 2014, the plaintiff filed a medical malpractice complaint against the defendants, Mercy Hospital and Medical Center, Cordia Clark-White, M.D., Alfreda Hampton, M.D., Natasha Harvey, M.D. and Patricia Courtney.[2] The plaintiff alleged that in August 2013, she underwent a surgical procedure at Mercy Hospital during which she sustained injuries due to the negligence of the defendants. The defendants filed their appearances and answers to the complaint. Thereafter the parties conducted discovery.

¶ 5     On May 30, 2017, the plaintiff filed her answers to interrogatories. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007). In her answers, the plaintiff disclosed David Preston, M.D., as a testifying

---

[1]The trial court did not specify the exact form of contempt. However, the trial court and the parties treated it as a "friendly contempt," designed to test the correctness of the underlying production order. See *Harris v. One Hope United, Inc.*, 2015 IL 117200, ¶ 6.

[2]The remaining defendants were dismissed from the suit and are not parties to this appeal.

expert witness. She further disclosed that Dr. Preston would be testifying as to the results of a test he would perform on the plaintiff on June 1, 2017. On that date, Dr. Preston examined the plaintiff and conducted a comparison electromyogram (EMG) and/or nerve conduction study (EMG study) on the plaintiff. Thereafter, Dr. Preston prepared a report in which he discussed his findings and opinions. Dr. Preston's report is not in the record on appeal.

¶ 6    On August 3, 2017, the plaintiff filed a motion to designate Dr. Preston a nontestifying expert consultant pursuant to Illinois Supreme Court Rule 201(b)(3) (eff. May 29, 2014) and to preclude discovery of facts and opinions known by Dr. Preston, absent a showing of exceptional circumstances by the defendants. In support of her motion, the plaintiff alleged the following facts.

¶ 7    Dr. Preston had been retained to assist the plaintiff's attorney by evaluating the nature and extent of the plaintiff's injuries and to perform the EMG study on her. Dr. Preston was not one of the plaintiff's treating physicians, he had not been referred to her by any of her treating physicians, and the doctor did not provide the plaintiff with any medical treatment for her complained-of injuries. The May 30, 2017, disclosure of Dr. Preston as a testifying expert witness was "inadvertent" and that on July 27, 2017, the plaintiff's attorney notified the defendant's attorneys that she was withdrawing Dr. Preston as a testifying expert witness. The plaintiff's attorney informed defendants' attorneys that because Dr. Preston would not be testifying, his opinions were privileged from discovery pursuant to Rule 201(b)(3). On July 31, 2017, the plaintiff's attorney served her amended answers to discovery which contained no mention of Dr. Preston as a testifying expert witness.

¶ 8    The plaintiff further alleged that on July 27, 2017, the trial court had ordered the plaintiff's attorney to provide deposition dates for her expert witnesses. However, the defendants refused to schedule those depositions until Dr. Preston's records of the EMG study were disclosed to them. Since the defendants' attorneys failed to show that the facts and opinions known to Dr. Preston could not be obtained by other means, pursuant to Rule 201(b)(3), the plaintiff alleged that she was not required to disclose them to the defendants. The defendants did not respond in writing to the plaintiff's motion.

¶ 9    On August 4, 2017, following argument by the parties, the trial court denied the plaintiff's motion to designate Dr. Preston as a consulting expert and ordered the plaintiff to produce Dr. Preston's records regarding the EMG study on the plaintiff. The plaintiff refused to produce Dr. Preston's records. The trial court found the plaintiff in contempt and imposed a $100 fine. The plaintiff filed a motion to reconsider the court's August 4, 2017, order. On September 6, 2017, the trial court denied the plaintiff's motion for reconsideration but reduced the fine for contempt to $1.

¶ 10    On September 19, 2017, the plaintiff filed her notice of interlocutory appeal from the trial court's orders of August 4, 2017, and September 6, 2017.

¶ 11                                    ANALYSIS

¶ 12    We are asked to determine whether a party who has disclosed a witness as a testifying expert may thereafter redesignate that witness as a consultant whose opinions and work product are privileged from discovery unless there is a showing of exceptional circumstances by the opposing party.

¶ 13                              I. Standard of Review

¶ 14 The applicability of a discovery privilege is a matter of law which we review *de novo*. *Harris*, 2015 IL 117200, ¶ 13.

¶ 15                    II. Rules and Principles Governing Pretrial Discovery

¶ 16 The objectives of pretrial discovery are to allow better preparation for trial, the elimination of surprise and to promote the expeditious and final determination of controversies in accordance with the substantive rights of the parties. *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997). In contrast, privileges are not designed to promote the truth-seeking process; rather, they serve some outside interest by protecting certain matters from discovery. *D.C.*, 178 Ill. 2d at 561-62. As such, privileges are an exception to the rule that the public has a right to every person's evidence. *D.C.*, 178 Ill. 2d at 562. "Privileges are not to be lightly created or expansively construed, for they are in derogation of the search for the truth." *D.C.*, 178 Ill. 2d at 562.

¶ 17 Illinois Supreme Court Rule 201(b)(1) (eff. May 29, 2014) provides in pertinent part that "[e]xcept as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action." Illinois Supreme Court Rule 201(b)(2) (eff. May 29, 2014) provides in pertinent part that "[m]aterial prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." Illinois Supreme Court Rule 201(b)(3) (eff. May 29, 2014) provides:

"A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial. The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional

circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject matter by other means."

¶ 18                                    III. Discussion

¶ 19    We begin by observing that in Illinois, a party may withdraw an expert witness so long as the opposing party is given clear and sufficient notice allowing it to take the necessary action in light of the abandonment of the witness. *Taylor v. Kohli*, 162 Ill. 2d 91, 97 (1994). However, the plaintiff does not merely seek to withdraw Dr. Preston as a testifying expert witness but to redesignate him as a nontestifying consultant whose reports and opinions are protected from discovery by the defendants pursuant to the privilege set forth in Rule 201(b)(3).

¶ 20    The issue in this case is not addressed in our discovery rules. Neither party has directed us to Illinois cases addressing this precise issue. In the absence of Illinois authority, the plaintiff relies on federal case law interpreting the federal rules corresponding to our rules governing discovery.

¶ 21    The defendants point out that several of these decisions are unpublished orders and that such orders have no precedential value in Illinois courts. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 54. However, our supreme court went on to say, "the district court's reasoning is of interest." *Board of Education of Springfield School District No. 186*, 2017 IL 120343, ¶ 55. Moreover, where there are similarities between provisions of our Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2016)) and the Federal Rules of Civil Procedure, our courts have looked to federal precedent interpreting the federal rule for guidance in interpreting the Illinois Code. *Owens v. VHS Acquisition Subsidiary Number 3, Inc.*, 2017 IL App (1st) 161709, ¶ 27; see *Fauley v. Metropolitan Life Insurance Co.*,

2016 IL App (2d) 150236, ¶ 41 (where no Illinois case was on point, the reviewing court considered an unreported federal court of appeals case to be persuasive authority).

¶ 22    Since Illinois discovery rules and prior decisions have not addressed this precise issue, we find sufficient similarities between our discovery rules and federal discovery rules so as to render federal case law on this issue instructive and the federal courts' reasoning persuasive, though not precedential. While the term "consultant," is not used, the Federal Rules of Civil Procedure similarly distinguish between an expert whose opinions may be presented at trial and an expert employed only for trial preparation and not expected to testify. *San Román v. Children's Heart Center, Ltd*, 2010 IL App (1st) 091217, ¶ 23; Fed. R. Civ. P. 26(b)(4)(A), (B).[3]

¶ 23    Prior to 2009, the majority of federal courts decisions took the view that a party could change its mind and change the designation of an expert witness, in which case that expert could not be subject to discovery absent a showing of exceptional circumstances. *Davis v. Carmel Clay Schools*, No. 1:11-cv-00771-SEB-MJD, 2013 WL 2159476, at *3 (S.D. Ind. May 17, 2013); see *Ross v. Burlington Northern R.R. Co.*, 136 F.R.D. 638, 639 (N.D. Ill. 1991); *Sunrise Opportunities, Inc. v. Regier*, No. 05 C 2825, 2006 WL 581150, at *1 (N.D. Ill. March 7, 2006). But see *House v. Combined Insurance Co. of America*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) (the opposing party could depose and use an expert at trial, who had been previously disclosed but subsequently withdrawn as a witness).[4]

¶ 24    In 2009, the Seventh Circuit Court of Appeals recognized that "[a] witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report

---

[3]The nontestifying expert provision is now contained in Rule 26(b)(4)(D) (Fed. R. Civ. P. 26(b)(4)(D)).

[4]*House* reflected the minority view prior to 2009.

has been disclosed, and a deposition conducted, to the status of a trial-preparation expert whose identity and views may be concealed." *Securities & Exchange Comm'n v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009) (citing Fed. R. Civ. P. 26(b)(4)(B)); see *Hartford Fire Insurance Co. v. Transgroup Express, Inc.*, 264 F.R.D. 382 (N.D. Ill. 2009). However, neither the pre-2009 nor the post-2009 cases distinguished situations where the expert's name was disclosed but no report disclosed from those where the expert report had been disclosed. *Davis*, 2013 WL 2159476, at *5.

¶ 25    In *Davis*, the issue was "whether a witness who was identified as a testifying expert, but never produced a report or provided testimony, can be re-designated as a non-testifying or consulting expert to be shielded from discovery." *Davis*, 2013 WL 2159476, at *2. The issue before it required the district court to determine what constituted the "designation" of an expert witness. The court observed that in the Seventh Circuit, *Koenig* and its progeny dictated that once the expert's report was disclosed to the opposing party, the expert ceased to enjoy protection from discovery by the opposing party. But "it is clear that prior to producing the expert report, courts [have found] that a party can change a testifying expert to a non-testimonial expert without losing the protections" from discovery, absent exceptional circumstances. *Davis*, 2013 WL 2159476, at *7. Following an analysis of the relevant case law, the court concluded that

> "both the disclosure of the name of the expert as well as the expert's required report is
> necessary to fully disclose a testifying expert under Fed R. Civ. P. 26 and comply with
> that Rule. The Court also agrees that parties are entitled to change their minds and decide
> not to use an expert to testify at trial. *** Defendant did not disclose any testimony or

expert opinions in the form of a report from [the expert witness]. Moreover, Plaintiff has shown no reliance upon Defendant's expert disclosure *** that would result in any prejudice to Plaintiff. As a result, the only means by which Plaintiff is entitled to conduct discovery of [the redesignated expert witness] is the 'exceptional circumstances' exception of Rule 26(b)(4)(D)." (Emphasis omitted.) *Davis*, 2013 WL 2159476, at *7.

¶ 26 Rule 213(f)(3) provides that for a "controlled expert witness, the party must identify: *** (iv) any reports prepared by the witness." Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018). In the present case, the plaintiff had disclosed the identity of her expert, Dr. Preston but had not yet disclosed or identified his report because at the time she filed her answers to interrogatories, Dr. Preston had not yet conducted an examination or any testing of the plaintiff.

¶ 27 The defendants raise several arguments in support of their contention that once the plaintiff disclosed Dr. Preston as a testifying expert, they were entitled to the results of the EMG study. We address each argument in turn.

¶ 28                                    A. Treating Physician

¶ 29 The defendants maintain that Dr. Preston was one of the plaintiff's treating physicians since he examined her and conducted the EMG study to assess the health of her muscles and nerve cells. They point out that by filing suit a plaintiff implicitly consents to his physician releasing any medical information related to his physical or mental condition that the patient had placed at issue in the lawsuit. *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 591 (1986). The defendants reason that since Dr. Preston was a treating physician, the plaintiff has waived any right to withhold the results of Dr. Preston's June 1, 2017, EMG study from the defendants.

¶ 30    "[W]hether a physician is a treating physician or an expert depends on the physician's relationship to the case, not the substance of his testimony." *Cochran v. Great Atlantic & Pacific Tea Co.* 203 Ill. App. 3d 935, 940 (1990). Simply put, a treating physician is one consulted for treatment, and an expert is one consulted for testimony. *Cochran*, 203 Ill. App. 3d at 941. In *Cochran*, after suffering a fall, the plaintiff saw Dr. Thomas Griffith, who in the course of treating the plaintiff referred her to Dr. G. Richard Locke, a radiologist for diagnostic X-rays and a CT scan. The reviewing court determined that Dr. Locke was a treating physician, *i.e.* "[h]e was a physician to whom plaintiff had been referred for treatment." *Cochran*, 203 Ill. App. 3d at 941.

¶ 31    The opposite is true in the present case. In her answers to discovery, the plaintiff disclosed Dr. Preston as a "controlled expert opinion witnesses" who would be testifying regarding the results of the EMG study he was performing on the plaintiff on June 1, 2017. There is nothing in the record indicating that the plaintiff had been referred to Dr. Preston for treatment or that Dr. Preston had, prior to that date, seen or treated the plaintiff in connection with her alleged injuries. Dr. Preston's relationship to the case was that of an expert who had been consulted for testimony, not for treatment.

¶ 32    We conclude that Dr. Preston was not one of the plaintiff's treating physicians. Therefore, the defendants are not entitled to the results of the EMG study on that basis.

¶ 33                                B. Judicial Admission

¶ 34    The defendants argue that the plaintiff's disclosure of Dr. Preston as her expert witness is binding as a judicial admission. "Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *In re Estate of*

*Rennick*, 181 Ill. 2d 395, 406 (1998). Judicial admissions are not evidence but have the effect of withdrawing a fact from contention. *Brummet v. Farel*, 217 Ill. App. 3d 264, 267 (1991). In general, answers to interrogatories may be treated as judicial admissions. *Brummet*, 217 Ill. App. 3d at 267. A judicial admission may not be controverted or explained. *Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360, ¶ 36. However, the general rule is inapplicable when the party's testimony is inadvertent, or uncertain, or amounts to an estimate or opinion rather than a statement of concrete fact. *Brummet*, 217 Ill. App. 3d at 267.

¶ 35    The plaintiff's disclosure of Dr. Preston as an expert witness in her answer to interrogatories did not constitute a judicial admission. First, in her motion to redesignate Dr. Preston as a consultant, the plaintiff maintained that the disclosure was inadvertent. Second, Rule 213 places a duty on the party answering the interrogatories to supplement or amend any prior answer whenever new or additional information becomes available. Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2018). Third, even after disclosing him as a testifying expert witness, the plaintiff was still entitled to withdraw him as a witness. *Taylor*, 162 Ill. 2d at 97.

¶ 36    In *Abruzzo*, the reviewing court held that a statement in the defendant's reply brief in response to its motion to dismiss was a judicial admission. The court determined that stating the emergency personnel left without rendering medical treatment went beyond accepting the allegations in the complaint as true for purposes of the motion to dismiss and was an equivocal assertion of fact constituting a judicial admission. *Abruzzo*, 2013 IL App (1st) 122360, ¶ 49. Therefore, even if the plaintiff's disclosure was a binding admission of fact, it only prevented her from denying that Dr. Preston was originally hired as an expert witness rather than as a consultant.

¶ 37    Accordingly, the plaintiff's disclosure of Dr. Preston was not a judicial admission.

¶ 38                              C. Waiver

¶ 39    The defendants argue that because Dr. Preston was initially disclosed as a testifying expert witness, the plaintiff waived any privilege to the EMG study. See Ill. S. Ct. R. 213, Committee Comments (rev. June 1, 1995) (stating in pertinent part that "a party must *** provide all reports of opinion witnesses").

¶ 40    We note that Rule 213(f) requires a party to furnish "the identities and addresses of witnesses who will testify at trial," as well as the subject matter and the opinions of the witnesses. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018). Illinois Supreme Court Rule 213(g) (eff. Jan. 1, 2018), provides as follows:

>    "The information disclosed in answer to a Rule 213(f) interrogatory, or in a discovery deposition, limits the testimony that can be given by a witness on direct examination at trial."

Construing sections (f) and (g) of Rule 213 together, the plaintiff would be required to turn over Dr. Preston's reports of the EMG study only if he were going to testify at trial, and if he testified, his testimony would be limited to his disclosures. As the plaintiff has withdrawn him as a witness, his report and opinions are not subject to discovery. Therefore, the committee comments to Rule 213(g) rule do not support the defendants' argument that they are entitled to Dr. Preston's records of the EMG study.

¶ 41    The defendants' reliance on *Dalen v. Ozite Corp.* 230 Ill. App. 3d 18 (1992), is misplaced. In that case, the reviewing court addressed whether Ozite Corporation (Ozite) waived any privilege regarding the confidentiality of a memorandum prepared for Ozite by its attorney

when it allowed Dalen's attorney to review its files. The court rejected Ozite's claim that it did not have time to purge the files and that the disclosure of the memorandum was inadvertent. The court determined Ozite and its counsel's conduct was completely inconsistent with their claim of confidentiality. Under the balancing test set forth in *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204 (N.D. Ind. 1990), the court determined that by allowing Dalen free access to its files after Dalen made numerous requests for them, Ozite waived the protection of the work product doctrine. *Dalen*, 230 Ill. App. 3d at 29. In contrast, in the present case, Dr. Preston's report had not been disclosed to the defendants since it was not even in existence at the time the plaintiff disclosed him as her controlled expert witness.

¶ 42    Therefore the plaintiff did not waive the consultant's privilege by disclosing Dr. Preston as her testifying expert witness.

¶ 43                    D. *Shields v. Burlington Northern & Santa Fe Ry. Co.*

¶ 44    The defendants argue that, even if Dr. Preston was considered a "consultant," they are still entitled to his EMG study since they allege it contains material and relevant facts. In support, they rely on *Shields v. Burlington Northern & Santa Fe Ry. Co.*, 353 Ill. App. 3d 506 (2004), in which the reviewing court considered the applicability and scope of the work-product privilege of Rule 201(b)(2) and the consultant work product privilege of Rule 201(b)(3) to a surveillance video.

¶ 45    In *Shields*, the plaintiff sought production of a surveillance video taken of the plaintiff since he had incurred his injuries and that was in the possession of the defendant. The defendant refused to produce the video, arguing that the video was work product and not discoverable until

the defendant determined to use it at trial. The trial court found the defendant's attorney in contempt. *Shields*, 353 Ill. App. 3d at 507-08.

¶ 46 On review of the contempt finding, the appellate court observed that Illinois law supported the production of surveillance tapes because the work product privilege " 'does not protect material and relevant evidentiary facts from the truth-seeking processes of discovery.' " *Shields*, 353 Ill. App. 3d at 509 (quoting *Stimpert v. Abdnour*, 24 Ill. 2d 26, 31 (1962)). The court noted that the reviewing court in *Neuswanger v. Ikegai America Corp.*, 221 Ill. App. 3d 280 (1991), held that a videotape made by the defendant's consulting expert showing his tests on the operation of the machine that injured the plaintiff was discoverable, "with appropriate deletions from the soundtrack for anything the expert said that revealed his thought processes and theories." *Shields*, 353 Ill. App. 3d at 509. The court in *Neuswanger* explained:

" '[W]here the material gathered or produced by an attorney or expert is of a more concrete nature *** and does not expose the attorney's or expert's mental processes, it serves the judicial process and [it] is not unfair to require the parties to mutually share such material and analyze it prior to trial.

\* \* \*

In our opinion, the truth-seeking interest in a civil case is sufficiently compelling to require disclosure of [the] consulting expert's videotaped field investigation without a showing of exceptional circumstances.' " *Shields*, 353 Ill. App. 3d at 509-10 (quoting *Neuswanger*, 221 Ill. App. 3d at 285-86).

When any protected conceptual data was deleted, the videotape would not constitute " 'work product' within the meaning of discovery rules." *Shields*, 353 Ill. App. 3d at 510.

¶ 47   The court in *Shields* distinguished *Wiker v. Pieprzyca-Berkes*, 314 Ill. App. 3d 421 (2000), where the defendant refused to produce any surveillance video of the plaintiff who sought damages for injuries suffered in an auto collision. On appeal from a verdict in favor of the defendant, the appellate court found that the failure to produce the video did not require reversal of the verdict since " 'the person hired to make the surveillance video qualifies as a consultant under [Rule 201(b)(3)], so long as he or she and the video are not presented at trial.' " *Shields*, 353 Ill. App. 3d at 510 (quoting *Wiker*, 314 Ill. App. 3d at 430). The court in *Shields* distinguished *Wiker* on the grounds that the case did not hold that the surveillance videotape constituted protected work product and did not discuss how the videotape would reveal any protected mental processes, opinions or strategy. Therefore, *Wiker* did not compel reversal of the order for the production of the surveillance tapes in the case before it. *Shields*, 353 Ill. App. 3d at 511.

¶ 48   The cases relating to production of surveillance tapes are factually in apposite. The dispute in the present case does not involve a surveillance video of the plaintiff. Moreover, a surveillance video by its nature records factual information in the form of images, which is distinct from an expert's mental processes.

¶ 49   We find the decision in *Costa v. Dresser Industries, Inc.*, 268 Ill. App. 3d 1 (1994), to be more relevant. In *Costa*, the parties agreed to joint testing of tissue samples from the decedent's lungs. Following the testing, the plaintiff was ordered to turn over slides and other material to the defendants that were then inspected and/or tested by the defendants' expert. The trial court denied the plaintiff's request for the identity of the defendants' consulting expert and the results of any testing. *Costa*, 268 Ill. App. 3d at 7. In upholding the denial of the production request, the

reviewing court noted that there was no dispute that the defendants' alleged expert was a consulting expert and as such his identity, opinions, and work product were discoverable only upon a showing of exceptional circumstances that make it impracticable to obtain facts and opinions on the same subject matter by other means. *Costa*, 268 Ill. App. 3d at 7-8. The court found that the plaintiff failed to establish exceptional circumstances since there was sufficient tissue to do the amount of testing she wanted, the tissue the defendants received was not shown to be unique, and the plaintiff's own expert was able to refute the cause of death testimony by the defendants' testifying experts. *Costa*, 268 Ill. App. 3d at 8.

¶ 50    In the present case, the trial court ordered the plaintiff's attorney to produce "Dr. Preston's records regarding his June 1, 2017 comparison EMG study" on the plaintiff. In the absence of the EMG study from the record on appeal, we cannot conclude that the material sought from Dr. Preston was of a purely concrete nature, as was the case in *Shields* and *Neuswanger*, and that the production of the EMG study would not expose Dr. Preston's thought processes. We find the tissue testing results in *Costa* more comparable to the EMG comparison study than the surveillance videotapes in *Shields* and *Neuswanger*. The decision in *Costa* supports our conclusion that Dr. Preston's EMG study was protected by the consultant's work product privilege and subject to disclosure only upon a showing of exceptional circumstances.

¶ 51                                  E. Fundamental Fairness Exception

¶ 52    Finally, the defendants maintain that the plaintiff is using the consultant's privilege to subvert the legal process. They liken the situation in the present case to the one presented in *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206. In that case, the reviewing court rejected the defendants' claim that the "fundamental fairness exception"

required disclosure of the plaintiff's mental health records. *Deprizio*, 2014 IL App (1st) 123206, ¶ 30. The court noted that "the exception was narrow and only applied to circumstances where 'plaintiffs are invoking the mental-health therapist-patient privilege to exploit or subvert the legal process.' " *Deprizio*, 2014 IL App (1st) 123206, ¶ 31 (quoting *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 61 (2002)). Since the present case does not involve mental health records, the exception does not apply. Moreover, other than the fact of withdrawal of Dr. Preston and re-designating him as a Rule 201(b)(3) consultant, the defendants fail to identify any evidence in the record to support their claim of subversion of the legal process by the plaintiff.

¶ 53    After careful consideration, we reject the defendants' arguments that they are entitled to the results of Dr. Preston's June 1, 2017, EMG study on the plaintiff.

¶ 54                                    CONCLUSION

¶ 55    Persuaded by the analysis of the federal courts in the decisions discussed above, we hold that where a previously disclosed testifying expert witness has been timely withdrawn prior to disclosing his or her report in discovery, the expert may be redesignated a Rule 201(b)(3) consultant and entitled to the consultant's privilege against disclosure, absent exceptional circumstances. In the present case, Dr. Preston's report of the EMG study he performed on the plaintiff had not been disclosed to the defendants prior to the motion to redesignate him as a consultant. Therefore, the trial court erred when it denied the plaintiff's motion to redesignate Dr. Preston as Rule 201(b)(3) consultant.

¶ 56    We reverse the trial court's order denying the plaintiff's motion to redesignate Dr. Preston as a Rule 201(b)(3) consultant and ordering her to produce Dr. Preston's EMG study.

We vacate the contempt finding against the plaintiff and the $1 fine imposed. This case is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 57    Reversed in part and vacated in part; cause remanded.