NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250698-U

NO. 4-25-0698

IN THE APPELLATE COURT

FILED
February 13, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Hancock County |
| NATHAN G. AULT, | ) | No. 24DT51 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Rodney G. Clark, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred in granting defendant's motion to suppress evidence.

¶ 2    Defendant, Nathan G. Ault, was charged with driving under the influence (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2024)) and improper lane usage (*id.* § 11-709). He filed a motion to suppress evidence, arguing the charges resulted from an improper traffic stop. The trial court granted defendant's motion, and the State appealed. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    In July 2024, Hancock County Sheriff's Deputy Kolton Johnson executed a traffic stop of defendant's vehicle and issued defendant two traffic citations for DUI (*id.* § 11-501(a)(1), (a)(2)) and one traffic citation for improper lane usage (*id.* § 11-709). In April 2025, defendant filed a motion to suppress evidence against him, arguing he was unlawfully seized by Johnson.

Specifically, defendant alleged the underlying stop was premised on Johnson's claim that he committed the offense of improper lane usage. Defendant asserted, however, that he did not commit that alleged traffic violation and, as a result, Johnson lacked both probable cause and a reasonable suspicion to stop his vehicle.

¶ 5    In May 2025, the trial court conducted a hearing on defendant's motion. Evidence showed the traffic stop at issue occurred around 12:50 a.m. on July 23, 2024, and that it was recorded by Johnson's "dash camera." The dash-camera video was admitted into evidence, and portions of the video were played during the hearing. The video depicted Johnson following defendant's vehicle for approximately two minutes before activating his emergency lights and effectuating the traffic stop. The record indicates the court considered the video only up to the point that defendant's and Johnson's vehicles stopped on the side of the roadway.

¶ 6    At the hearing, defendant called Johnson as a witness and testified on his own behalf. Johnson agreed that the video depicted his vehicle to be 15 to 20 yards away from defendant's vehicle when defendant was "pulled over." He estimated there were times he was roughly 50 yards away from defendant's vehicle while following behind it. Johnson maintained that while driving behind defendant, he observed that defendant's truck was "swaying and drifting inside of his lane." He also observed defendant's truck "failing to maintain its own lane" by momentarily crossing the fog line. Johnson identified that instance on the dash-camera video and agreed that the incident was "the only potential [lane line] violation" he observed. He also agreed that the road they were traveling on was "windy or curvy."

¶ 7    Johnson asserted that an additional traffic violation he observed was defendant having a registration light that was "not illuminated." He stated he "had [a] reasonable suspicion that [defendant's registration light] was out or dim." Johnson agreed that defendant's "registration

plate" could be seen on the video as "a white rectangular box" on the back of defendant's truck. He testified that he could see "that the white rectangle [was] lit up" because his "headlights [were] on it" and that he saw the white rectangle "[a]fter [his] headlights were on it." According to Johnson, "[e]very car should have two registration lights." He asserted that on defendant's vehicle, he observed that "the registration light would've been out or very dim."

¶ 8        Defendant testified that his truck had two registration lights. Both before and after the traffic stop, "[o]ne of the lights was working and one wasn't." Defendant believed his license plate area was "still clearly lit" with only one working light. On cross-examination, he asserted that every time he drove at night, he would "check the light" before driving to ensure that his license plate was illuminated. Defendant stated that on the night of the traffic stop, he had "a hand full of drinks" while "stopped at a parking lot." Before leaving the parking lot, he checked his registration light.

¶ 9        Following defendant's presentation of evidence, the trial court determined that he had made a *prima facie* showing that supported suppression and that the burden to produce evidence shifted to the State. The State then called Johnson as a witness.

¶ 10       Johnson testified that he initially observed defendant's vehicle as it passed by him. At the time, Johnson was "perpendicular to [defendant's] truck" and observed the truck's "registration light to be dim or out, as well as [defendant's] direction of travel and time of night." He stated he began to follow the truck and noticed that it was "drifting or swaying within its own lane." Johnson activated his dash camera and continued to follow the truck before ultimately initiating the traffic stop.

¶ 11       The State also played portions of the dash-camera video during Johnson's testimony. Johnson reiterated that when he initially saw defendant's truck from a perpendicular

vantage point, before his dash-camera was activated, he observed that defendant's registration light was either "not *** fully illuminated or very dim." Johnson also testified that when driving at night, he noticed differences between license plates that were "fully illuminated" and those that were not. Specifically, he stated that in his experience, when a license plate was fully or correctly illuminated, there was "less glare or reflectiveness" from his headlights and the plate was "easier to read." Johnson asserted that according to statute, "a plate need[ed] to be seen from approximately 50 feet." If a plate was not illuminated, he would have to get closer to see it. Prior to pulling defendant's vehicle over, he had difficulty reading defendant's license plate. Ultimately, Johnson asserted that he decided to initiate a traffic stop of defendant's vehicle due to defendant's "lane movement," his belief "that the registration light was not illuminated or very dim," and to "check on the health and well-being of the driver."

¶ 12     The trial court took the matter under advisement. In June 2025, it filed a written opinion, stating defendant's motion to suppress was "well taken." The court determined that Johnson's stop of defendant's vehicle was not justified based upon either the issue of defendant's lane usage or defendant having an improperly lit rear registration plate. With respect to the registration light issue, the court noted that Johnson's observation of the registration light as being out or dim was not shown on the dash-camera video, stating that "[d]uring the video, the deputy's headlights [were] shining on the license plate, and the plate [was] clearly visible." The court further noted that no testimony showed what the lighting was like when Johnson first saw defendant's vehicle from a perpendicular position or Johnson's distance from defendant's vehicle at that time. The court concluded as follows:

"The Court is unable to find objective factors associated with [Johnson's] testimony. [Johnson] subjectively thought the lights were out or were dim. He never

- 4 -

provided the Court with any objective findings to support this reason for pulling the Defendant over. Further, the Court wonders, even if the lights were dim, was the plate nonetheless visible for 50 feet as required by the statu[t]e? Therefore, this Court does not find the deputy had a reasonable articulable suspicion that a traffic violation had occurred."

¶ 13        On July 3, 2025, the trial court entered a written order, granting defendant's motion to suppress evidence. On July 7, 2025, the State filed a certificate of impairment, asserting the court's suppression of evidence substantially impaired its prosecution of the case.

¶ 14        This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16        On appeal, the State challenges the trial court's grant of defendant's motion to suppress evidence. It argues the underlying traffic stop was justified because Johnson had at least a reasonable suspicion that defendant's rear registration lighting was statutorily noncompliant. The State contends that Johnson correctly understood what Illinois law requires with respect to registration lighting and that he had experience with noncompliant registration lighting. Further, it maintains that Johnson's observations "of defendant's truck both from a perpendicular position and while following behind it" warranted an investigatory stop to verify the alleged traffic violation.

¶ 17                            A. Motions to Suppress

¶ 18        A defendant who files a motion to suppress evidence bears the burden of proof and "must make a *prima facie* case that the evidence was obtained by an illegal search or seizure." *People v. Brooks*, 2017 IL 121413, ¶ 22. If the defendant makes such a showing, "the burden shifts to the State to present evidence to counter the defendant's *prima facie* case." *Id.* "However, the

ultimate burden of proof remains with the defendant." *Id.*

¶ 19     When considering the trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Timmsen*, 2016 IL 118181, ¶ 11. First, the court's factual findings will be upheld unless they are against the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 39. Second, the court's ultimate legal conclusion regarding whether suppression is warranted is reviewed *de novo*. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 20                         B. Traffic Stops and Reasonable Suspicion

¶ 21     Both the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect citizens against unreasonable searches and seizures. *Id.* ¶ 9. "The touchstone of the fourth amendment is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' " *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

¶ 22     A traffic stop is a seizure within the meaning of the fourth amendment and, therefore, is "subject to the fourth amendment's reasonableness requirement." *People v. Close*, 238 Ill. 2d 497, 504-05 (2010). Such seizures are analyzed under the principles set forth in *Terry*, which authorize a police officer to "conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime." *Timmsen*, 2016 IL 118181, ¶ 9. "The officer must have a 'reasonable, articulable suspicion' that criminal activity is afoot." *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

¶ 23     "A police officer may stop a vehicle if he has a reasonable suspicion that the vehicle

has committed a traffic violation." *People v. Dunmire*, 2019 IL App (4th) 190316, ¶ 72. "The violation may relate to the condition of the vehicle itself" or be "for an equipment violation." *People v. Houlihan*, 167 Ill. App. 3d 638, 643 (1988).

¶ 24 Additionally, "[t]he investigatory stop must be justified at its inception." *Close*, 238 Ill. 2d at 505. " '[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.* (quoting *Terry*, 392 U.S. at 21). Although "[t]he officer's suspicion must amount to more than an inarticulate hunch," it "need not rise to the level of suspicion required for probable cause." *Id.* Notably, "[a] police officer can effect a lawful *Terry* stop without first considering whether the circumstances he or she observed would satisfy each element of a particular offense." (Internal quotation marks omitted.) *People v. Hackett*, 2012 IL 111781, ¶ 28.

¶ 25 To evaluate a police officer's conduct, courts use an objective standard, considering whether the facts available to the officer at the time of seizure would warrant a person of reasonable caution to believe the actions taken by the officer were appropriate. *Timmsen*, 2016 IL 118181, ¶ 9. "If reasonable suspicion is lacking, the traffic stop is unconstitutional and evidence obtained as a result of the stop is generally inadmissible." *People v. Gaytan*, 2015 IL 116223, ¶ 20.

¶ 26                                           C. This Case

¶ 27 Relevant to the issues presented here, section 12-201(c) of the Illinois Vehicle Code (625 ILCS 5/12-201(c) (West 2024)) sets forth the lighting requirements for a vehicle's rear "registration plate," *i.e.*, license plate. See *Gaytan*, 2015 IL 116223, ¶ 25 (using the terms "registration plate" and "license plate" interchangeably). That section provides as follows:

> "Either a tail lamp or a separate lamp shall be so constructed and placed as to
> illuminate with a white light a rear registration plate when required and render it

clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating a rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." 625 ILCS 5/12-201(c) (West 2024).

¶ 28 Initially, the State argues that under section 12-201(c), the lighting on defendant's registration plate "could have been partially functional without being statutorily compliant." It cites *Kendrick v. City of Kankakee*, 2024 WL 1476198 (C.D. Ill. Mar. 1, 2024), an unreported federal district court case. There, a police officer executed a stop of a vehicle due, in part, to his observation that the vehicle had " 'no properly functioning rear registration light.' " *Id.* at 1. The occupants of the vehicle claimed the stop was unlawful. *Id.* at 4. On review, the district court noted that there was some ambiguity as to whether the officer observed the registration light to be working in any capacity, as the officer had stated both that he "observed that there was not enough illumination to make the plate readable at a distance of 50 feet" and that " 'the rear license plate on the vehicle was not illuminated.' " *Id.* at 6. However, the court found the stop would have been justified on either basis, stating as follows:

> "[The officer's] observation was that Plaintiffs' rear license plate was not readable at a distance of 50 feet. Whether this was due to an inoperable registration light or an operable-but-insufficient registration light is not particularly salient. Either case would give rise to reasonable suspicion (and probable cause) to effectuate the traffic stop, under section 12-201(c)." *Id.* at 7.

The court explained that "[s]ection 12-201(c) does not merely require a functioning registration light." *Id.* Rather, "[t]o be compliant with the statute, the light must be working and so bright as to render the license plate readable from a distance of 50 feet." (Emphasis omitted.) *Id.*

¶ 29        As noted, *Kendrick* is an unreported federal district court decision. Federal district court decisions are not binding on this court but may be considered as persuasive authority. *People v. Lovelace*, 2018 IL App (4th) 170401, ¶ 61. In some instances, Illinois courts have also considered unreported federal orders for their persuasive value. See *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 55 (finding the reasoning in an unpublished federal order to be "of interest"); *Dameron v. Mercy Hospital & Medical Center*, 2019 IL App (1st) 172338, ¶¶ 21-22 (considering unpublished federal decisions as instructive); *Justin Time Transportation, LLC v. Harco National Insurance Co.*, 2014 IL App (5th) 130124, ¶ 21 (stating the reviewing court was not bound to follow an unreported federal district court order but reviewing it "for its persuasive authority").

¶ 30        Here, defendant neither addresses *Kendrick* nor challenges the State's interpretation of section 12-201(c). Moreover, we find the proposition for which the State cites *Kendrick* is wholly consistent with the plain and ordinary meaning of the statutory language. See *Gaytan*, 2015 IL 116223, ¶ 23 (stating that "[i]n construing a statute, the primary objective is to give effect to the legislature's intent," and [t]he best indication of that intent is the statutory language, given its plain and ordinary meaning"). Specifically, not only does section 12-201(c) plainly require a rear registration plate to be illuminated with a white light, but it also explicitly states that the light must "render [the plate] clearly legible from a distance of 50 feet to the rear." 625 ILCS 5/12-201(c) (West 2024). Accordingly, we agree with the State that a person may violate section 12-201(c) either by having no light illuminating his or her license plate, or by having a light that is too dim to make the license plate readable from a distance of 50 feet.

¶ 31        Next, we also agree with the State that the trial court erred in finding Johnson lacked a reasonable suspicion that defendant's registration light was noncompliant with section 12-201(c).

In granting defendant's motion to suppress, the court found Johnson's observations of defendant's registration light were not shown on the dash-camera video and that in the video, defendant's "plate [was] clearly visible." It characterized Johnson as having a "subjective[ ]" belief that the registration light was out or dim and noted that Johnson did not testify regarding the lighting conditions when he first saw defendant's vehicle or his distance from the defendant's vehicle at the time of that initial observation. The court also stated Johnson failed to offer "objective findings" to support the stop.

¶ 32        First, as Johnson indicated during his testimony, defendant's rear license plate was visible as "white rectangle" on the dash-camera video. However, during the entire portion of the video that was considered by the trial court, the headlights from Johnson's vehicle illuminated the rear of defendant's truck. Moreover, although the plate is visible in the video, it is only visible as a "white rectangle." At no point on the video is defendant's license plate readable. In fact, no letters or numbers are even visible on the plate until Johnson pulls his vehicle to within a few feet of defendant's truck after it stopped on the side of the roadway. Contrary to defendant's suggestions on appeal, the visibility of the "white rectangle" on the dash-camera video does not establish that he was compliant with section 12-201(c). Rather, the statute requires more, stating that the plate should be "clearly *legible*." (Emphasis added.) 625 ILCS 5/12-201(c) (West 2024).

¶ 33        Second, although the trial court was critical of the lack of detail regarding the circumstances under which Johnson first observed defendant's truck, that first observation was not the sole basis Johnson relied upon in suspecting a violation of section 12-201(c). Johnson testified that when he first observed defendant's vehicle from a perpendicular vantage point, without his headlights shining on the vehicle, defendant's registration light appeared to be out or dim. Johnson did not effectuate a traffic stop at that point but, instead, followed and continued to observe

defendant's vehicle. He testified that in his experience, there were differences between properly and improperly illuminated registration plates when driving at night. In particular, when registration plates were properly illuminated, there was "less glare or reflectiveness" from his headlights and the plate was easier to read. When plates were not properly illuminated, he would have to get close to the vehicles to see them. Johnson testified that prior to pulling defendant over, he had difficulty reading defendant's license plate.

¶ 34       We note that police officers "are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Internal quotation marks omitted.) *Dunmire*, 2019 IL App (4th) 190316, ¶ 73. In this instance, Johnson articulated specific facts, including observations based upon his own experience as a police officer, explaining the basis for his determination that defendant's registration plate was not properly lit. The record shows he was aware of section 12-201(c)'s requirement that a registration light had to render a plate legible from 50 feet, and he testified that when he first observed defendant's vehicle from a perpendicular position, without his headlights shining on the vehicle, defendant's registration light appeared out or dim. Additionally, after following behind defendant's vehicle at a distance of roughly 50 feet, he found defendant's license plate was difficult to read, circumstances that, based upon his experience, indicated noncompliance with section 12-201(c). Under these circumstances, Johonson was warranted in conducting an investigatory stop to verify the traffic violation.

¶ 35       On appeal, defendant cites two cases that he contends "upheld factual determinations like those made by the trial court in this case"—*City of Highland Park v. Kane*, 2013 IL App (2d) 120788, and *People v. Borowiak*, 2014 IL App (5th) 130388-U, ¶ 19. We note that the latter case cited by defendant is an unreported decision entered in July 2014. Illinois

Supreme Court Rule 23(e) (eff. June 3, 2025) provides that unreported Illinois decisions are generally nonprecedential and that only such orders entered on or after January 1, 2021, may be cited for persuasive purposes. Additionally, even considering both cited cases, we note that each turns upon its own set of specific facts. Neither decision is sufficiently factually similar to the present case to be dispositive of the issue presented.

¶ 36 Defendant further asserts that it is clear from the trial court's ruling that it found Johnson was not credible. We note, however, that the court did not make that explicit finding. Rather, it appeared to base its decision on its belief that Johnson's initial observations were subjective and that he "never provided the Court with any objective findings to support" a stop based on a violation of section 12-201(c). Ultimately, the court failed to take into account Johnson's testimony that after initially observing defendant's vehicle and observing the registration light to appear to be out or dim, he followed the vehicle at a distance of roughly 50 feet and found that defendant's license plate was difficult to read.

¶ 37 Under the totality of the circumstances, we find Johnson had a reasonable articulable suspicion that defendant had violated section 12-201(c) of the Vehicle Code. He identified specific facts that, along with reasonable inferences, warranted an investigatory stop to verify the violation. The trial court erred in finding otherwise and in granting defendant's motion to suppress evidence.

¶ 38                                    III. CONCLUSION

¶ 39 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 40 Reversed and remanded.