2020 IL App (1st) 190762-U

THIRD DIVISION
September 30, 2020

No. 1-19-0762

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Circuit Court of Cook County |
| | ) | |
| ELYSE RIFKIN | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | 16 D 7234 |
| v. | ) | |
| | ) | Honorable |
| ROBERT RIFKIN, | ) | Matthew Link, |
| | ) | Judge Presiding |
| Respondent-Appellant. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Trial court did not err by denying respondent's motion to reconsider.

¶ 2    In August 2016, petitioner Elyse Rifkin filed a petition for dissolution of marriage against respondent Robert Rifkin. The matter eventually proceeded to a bench trial. In August 2018, the circuit court issued its judgment. Two aspects of the court's ruling are relevant to this appeal.

¶ 3    First, the court determined that, among other things, the parties' marital assets included a 10 percent stake in a company called McDuffee Design Group, Inc., that Robert purchased in 2004 for $100,000. The court ultimately determined that the McDuffee holding was worth $100,000. In reaching that conclusion, the court explained:

"ROBERT testified that he had worked on the books as an accountant prior to the purchase and that he believes the company currently has no value. However, ROBERT testified that he has not seen McDuffee's books since approximately 2015. Additionally, ROBERT disclosed $1,148 in total income from McDuffee on his 2016 U.S. Income Tax Return. (Respondent's Exhibit 32). The court finds ROBERT'S testimony as to the value of McDuffee not credible. Additionally, ROBERT testified that he did not know if the parties' interest in McDuffee can be divided between the parties upon divorce. There have been no appraisals or valuations of McDuffee submitted to this court and, as such, the only competent evidence regarding valuation of McDuffee is the purchase price of $100,000.00 paid."

¶ 4    Second, the court determined that, among other things, based on the evidence introduced by each party, the parties' marital debt included two student loans in Robert's name (for their children's education) with a collective balance due of $117,099.87.

¶ 5    On September 6, 2018, Robert filed a motion to reconsider. On October 31, 2018, Robert filed an amendment to his motion to reconsider. With these filings, Robert raised two points.

¶ 6    First, he claimed the circuit court should reconsider its ruling valuing McDuffee at $100,000, because newly discovered evidence established that McDuffee was valueless. Specifically, Robert explained that "unknown to [him] and the court at the time of trial was the fact that" McDuffee filed for bankruptcy in October 2017, and that "the no asset" bankruptcy case "was closed" in December 2017. Robert maintained that he was not given notice of the bankruptcy proceedings because he was not listed as one of McDuffee's creditors. Robert asserted that he "had no reason to investigate the legal status of McDuffee as he was of the belief that

McDuffee had no value." He learned of the bankruptcy, he said, on August 16, 2018 (about a week after the court entered its final judgment), when he emailed the principal shareholder of McDuffee requesting his 2017 K-1 tax form, at which point Robert "was informed that the principal shareholder 'closed [McDuffee] last year and filed for bankruptcy."

¶ 7 Continuing, Robert declared that the circuit court "must take judicial notice of the McDuffee bankruptcy under Rule 201(d) of the Illinois Rules of Evidence. There can be no dispute of the readily ascertainable fact that McDuffee was a no asset Chapter 7 bankruptcy at the time of trial." Robert surmised that "[h]ad the court known of the McDuffee bankruptcy, it could not have assigned a value of $100,000 to the parties' interest" and "would not have ordered an equalization payment from Robert to Elyse."

¶ 8 Second, Robert argued that at trial, counsel for Robert and Elyse both failed to identify a discrepancy in the evidence that understated the total value of Robert's student loan debt. Specifically, Robert argued that at trial, he submitted an exhibit listing his student loan debt as $132,485, but the court's judgment omitted two loans that were listed on Robert's exhibit and thus understated his debt by approximately $15,000. Robert asserted that "[i]t was an omission of the attorneys in failing to bring to the court's attention the two omitted loans."

¶ 9 On March 18, 2019, the court entered an order denying Robert's motion to reconsider. The court explained that the issues raised in Robert's motion were "not proper for a motion for reconsideration in that it argues evidence that was available at trial." On appeal, Robert maintains that the circuit court erred by denying his motion to reconsider.

¶ 10 We are inhibited by the failure of Robert, acting *pro se*, to provide citations to the record as required by our supreme court rules. See Ill. S. Ct. R. 341(h)(6), (7) (eff. May 25, 2018). We

are further limited by the fact that the appellee did not file a brief. But we may consider this appeal on the appellant's brief only, as the record is short and the issues fairly straightforward. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 11    Robert filed a post-judgment motion within 30 days of the judgment in a non-jury trial, so his motion was governed by section 2-1203 of the Code of Civil Procedure. 735 ILCS 5/2-1203 (West 2016). That provision allows a party to move for "rehearing or a retrial, or modification of the judgment or to vacate the judgment or for other relief." *Id*. Our review of the trial court's ruling on such a post-judgment motion is for an abuse of discretion. *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 409 (2005). The question is not whether this court would have reached the same conclusion as the trial court, but "whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *Id*.

¶ 12    Robert first argues that he discovered evidence of McDuffee's bankruptcy (which happened in 2017) approximately a week after the trial court's final judgment in August 2018. That newly discovered evidence, he says, clearly shows that his 10 percent interest in that property could not be properly valued at $100,000, the figure the trial court assigned to it.

¶ 13    To obtain relief on a section 2-1203 motion based on newly discovered evidence, the movant must show, among other things, that "he could not have produced the evidence at the first trial by exercising due diligence." *Id*.; see also *Gersch v. Kelso-Burnett Co.*, 272 Ill. App. 3d 907, 911 (1995). We have this doctrine to encourage litigants to marshal all the evidence they can reasonably discover and gather before trial, so that when it's time for trial, both parties are presenting the best case they can. We disfavor allowing parties to await the judgment and then, if

they disagree with it, to bring additional evidence to the attention of the trial court that, in fairness, was something they either knew beforehand or could have discovered with reasonable diligence. We would continue trying and re-trying cases forever if we did not have this rule.

¶ 14     With this in mind, we do not find the evidence of McDuffee's bankruptcy to be "newly discovered." For one thing, it is hard to believe that the law would not charge constructive notice of a company's bankruptcy to a 10-percent stakeholder in that company.

¶ 15     And Robert showed, himself, how easy it was to obtain that information: he emailed the principal shareholder, requesting his K-1 tax form for 2017, at which time the principal owner advised him of the bankruptcy. In seeking to prove the value (or lack thereof) of the company, Robert easily could have done something as simple as pick up the phone or send an email, as he did after the trial, to garner that proof, to say nothing of a commonplace subpoena to the company, if he could not get answers the easy way.

¶ 16     Had he taken any of these simple steps to discover the current financial value of McDuffee, he would have learned of its bankruptcy before trial and presented it to the trial court. He cannot characterize evidence that was readily available to him, had he looked, as "newly discovered." He is thus not entitled to relief on this claim.

¶ 17     On his second point of error, Robert claims a discrepancy between the amount of student loan debt he identified in his financial affidavit and the amounts identified in Elyse's exhibits. He claims that the trial court failed to consider two other student loans that Robert was paying for their daughter, which "both Robert's and Elyse's attorneys did not identify." Again, because Robert never provides citations to the record, we have had to pore over different parts of the record to reconstruct this argument for him.

¶ 18     As Elyse argued below (though she filed no brief in this court), there was indeed a discrepancy over two student loans that were not in Robert's name, and thus did not appear in Elyse's trial exhibits as Robert's debts, but which Robert claimed as debts on his financial statement. He claimed that payments on these loans, though not in Robert's name, were "gifts" to his daughter. On cross-examination, Elyse's lawyer tried to cast doubt on that claim, establishing that Robert never mentioned these payments to Elyse as "gifts." The point, in any event, was that Robert was not required to pay off these law school loans and could not rightly call them "debt."

¶ 19     The trial court heard all this evidence and obviously decided not to include those two student loans as "debt" to Robert. The court relied, instead, on the debt established by Elyse's trial exhibits. From what we can gather, it was not unreasonable to refuse to assign debt to Robert that was not in Robert's name, regardless of whether he admirably but *voluntarily* chose to pay off that debt. In any event, without much guidance here from Robert and doing our best to review the record without any citations from Robert, we are in no position to say that the trial court's refusal to alter its previous decision was so arbitrary that it exceeded all bounds of reason. *Wolff*, 355 Ill. App. 3d at 409. We thus uphold the trial court's judgment on this point as well.

¶ 20     We affirm the trial court's judgment denying the section 2-1203 motion.

¶ 21     Affirmed.